**CHRISTUS HEALTH d/b/a/ Christus New Horizons Center, Appellant,**

v.

**Bennie BEAL, III, Appellee.**

**No. 01-06-01151-CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 26, 2007.

Erin E. Lunceford, Munisteri, Sprott, Rigby, Newson & Robbins, P.C., Houston, TX, for Appellant.

Michael Kerensky, The Kerensky Law Firm, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY and WILSON.*

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Christus Health d/b/a Christus New Horizons Center ("Christus"), appeals from the trial court's order denying its motion to dismiss for failure to file an expert report. In two issues, Christus

---

* The Honorable Davie L. Wilson, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

argues that the trial court abused its discretion in denying the motion to dismiss because (1) Christus is a health care provider and (2) the appellee has asserted a health care liability claim.

We affirm.

### Facts and Procedural History

On January 18, 2006, while a resident at Christus, a drug and alcohol treatment center, Bennie Beal, III, was injured when the bed in which he was sleeping collapsed. The bed consisted of a wooden frame; a flat, metal-spring platform that rested on wooden slats mounted on the inside of the bed frame; and a mattress, which rested on the metal-spring platform.

According to his deposition, Beal was asleep when the metal-spring platform and the mattress fell through the wooden bed frame to the floor. The fall awakened him, but he could not move because of "excruciating pain" in his neck, back, arms, and legs. Because he could not get up, Beal began to call for help. Twenty or 30 minutes later, another resident heard Beal calling for help and notified Louise Shepherd, a Christus staff member, about Beal's fall. When she came into his room, Beal told Shepherd that he could not get up on his own. Eventually Shepherd was able to help Beal over the wooden bed frame and into the other bed in his room. Later that morning, Beal took a taxi to the emergency room, where he was told that he had a severe injury to his spinal cord, which later required surgery.

On May 11, 2006, Beal filed suit against Christus, alleging the following facts:

> On or about January 18, 2006, Bennie Beal III ... was a resident at the Defendant's treatment facility, Christus New Horizons Center. Beal was asleep in his bed. The bed collapsed. Beal fell to the floor. Beal sustained injuries and or suffered an aggravation of a pre-existing condition as a proximate result of the fall. The collapse of the bed and the resulting fall of Beal was [sic] proximately caused by the negligence of the Defendant.

On September 29, 2006, Christus filed a motion to dismiss, arguing that, because Christus is a health care entity and Beal's claim was a health care liability claim, his claim should be dismissed because he had failed to file an expert report pursuant to Texas Civil Practice and Remedies Code section 74.351.[1] Without making findings of fact or conclusions of law, the trial court denied Christus's motion to dismiss.

### Standard of Review

■ Section 74.351 of the Texas Civil Practice and Remedies Code requires that a claimant who makes a health care liability claim serve an expert report on each party or the party's counsel not later than the 120th day after the date his original petition was filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp.2006). If the plaintiff does not timely serve an expert report, the trial court must, on the motion of the affected physician or health care provider, enter an order dismissing the claim with prejudice. *Id.* § 74.351(b) (Vernon Supp.2006). Here, Beal did not serve an expert report on Christus; and, as a result, Christus filed a motion to dismiss for failure to file an expert report pursuant to section 74.351, which the trial court denied. Generally, we review a trial court's order on a motion to dismiss under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). However, "to the extent resolution of this issue requires interpretation of the statute

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2006).

itself, we review under a de novo standard." *Buck v. Blum,* 130 S.W.3d 285, 290 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.,* 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied); *Gomez v. Matey,* 55 S.W.3d 732, 735 & n. 2 (Tex.App.-Corpus Christi 2001, no pet.).

## Analysis

Christus argues that the trial court abused its discretion in denying the motion to dismiss because (1) Christus is a health care provider and (2) Beal has asserted a health care liability claim.

### Health Care Provider

In its first issue, Christus argues that it qualifies as a health care provider[2] because (1) it is licensed by the State of Texas; (2) it provides health care; and (3) it is a residential drug and alcohol treatment program, such as is found in detoxification facilities. Beal contends that Christus is not a health care provider because it does not "qualify for any of the categories listed" in the definition of a health care provider. Therefore, according to Beal, because a licensed treatment facility like Christus is not listed, Christus is not a health care provider under chapter 74.

Under the Texas Civil Practice and Remedies Code,

(A) "Health care provider" *means* any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, *including:*

(i)  a registered nurse;

(ii)  a dentist;

(iii) a podiatrist;

(iv)  a pharmacist;

(v)  a chiropractor;

(vi)  an optometrist; or

(vii) a health care institution.[3]

(B) The term includes:

(i)  an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician; and

(ii)  an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the em-

(C) an emergency medical services provider;

(D) a health services district created under Chapter 287, Health and Safety Code;

(E) a home and community support services agency;

(F) a hospice;

(G) a hospital;

(H) a hospital system;

(I) an intermediate care facility for the mentally retarded or a home and community-based services waiver program for persons with mental retardation . . .;

(J) a nursing home; or

(K) an end stage renal disease facility licensed under Section 251.011, Health and Safety Code.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(11) (Vernon 2005).

---

**2.** Christus cites *Oak Park, Inc. v. Harrison,* 206 S.W.3d 133 (Tex.App.-Eastland 2006, no pet.) for the proposition that a detoxification facility qualifies as a health care provider under chapter 74. In that case, however, the sole issue was whether the trial court had erred in denying the detoxification facility's motion to dismiss because the plaintiff's claims constituted health care liability claims. *Id.* at 137. We disagree with Christus's reliance on *Oak Park* because it did not discuss whether the detoxification facility was a health care provider. Rather, it appears that the parties presumed that the detoxification facility qualified as a health care provider under chapter 74.

**3.** A "health care institution" includes:
   (A) an ambulatory surgical center;
   (B) an assisted living facility licensed under Chapter 247, Health and Safety Code;

ployment or contractual relationship.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(12) (Vernon 2005) (emphasis added).

We agree with Beal that Christus does not fall within any of the categories listed in the definition of "health care provider." *See id.* § 74.001(12)(A). We disagree with his contention, however, that the list included within the definition of "health care provider" is an exclusive list.

Beal contends that the list is exclusive because the legislature "specifically listed and defined which health care facilities are covered by Chapter 74 ... with the full knowledge that the courts of Texas had construed [former] [a]rticle 4590i as an exclusive listing of health care facilities." Former article 4590i stated,

"Health care provider" *means* any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care *as* a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment.

Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(3), 1977 Tex. Gen. Laws 2039, 2041, *repealed and codified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 865, 884 (hereinafter, "former art. 4590i § 1.03(a)(3)") (emphasis added).

■ The revised definition of "health care provider," however, removes the term "as" and replaces it with "including." *Compare* former art. 4590i § 1.03(a)(3) *with* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(12). Use of the word "including" makes the list nonexclusive. *See* TEX. GOV'T CODE ANN. § 311.005(13) (Vernon

2005) (" 'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."). Thus, previous judicial interpretations of former article 4590i § 1.03(a)(3) that determined the list was exclusive are obsolete and have no application to the amended definition. *See Brown v. Villegas,* 202 S.W.3d 803, 805–06 (Tex.App.-San Antonio 2006, no pet.) (holding previous analysis of former article 4590i § 1.03(a)(3) obsolete due to legislative change of "as" to "including").

■ Because the list in the current definition of "health care provider" is not exclusive and the definition does not exclude a drug and alcohol treatment facility like Christus, the legislature has not expressed an intent that such a facility cannot fall within the protections of chapter 74. *See Pro Path Servs., L.L.P. v. Koch,* 192 S.W.3d 667, 671 (Tex.App.-Dallas 2006, pet. denied) (holding that because definition of "health care provider" does not exclude pathology laboratories, legislature has not expressed intent that pathology laboratories cannot fall within protections of chapter 74). To determine whether Christus qualifies as a health care provider, then, we must determine whether it is a "person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(12). "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed and furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(10) (Vernon 2005).

■ At the time Beal was injured, Christus held a license from the State of Texas pursuant to chapter 464 of the Health and Safety Code, which governs "facilities treating alcoholics and drug-dependent persons." *See* Tex. Health & Safety Code Ann. §§ 464.001–.0195, 464.031–.061 (Vernon 2001), § 464.020 (Vernon Supp.2006). The license states that Christus has 14 residential beds and that the setting is "Intensive Residential" and "Supportive Residential." The license was signed by Dr. Eduardo J. Sanchez, the Commissioner of the Texas Department of State Health Services. During his time at Christus, Beal was required to be on time for "group," participate in various duties about the facility, see a counselor at an assigned time, stay with the treatment plan, and complete assignments. Based on this evidence, we conclude that Christus is a health care provider as defined by the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(12).

We sustain Christus's first issue.

### Health Care Liability Claims

In its second issue, Christus argues that Beal's claims about an unsafe bed constitute health care liability claims because (1) the furnishing of a safe bed in a drug and alcohol treatment center directly relates to the health care provided to Beal in that a safe bed was an inseparable part of his treatment; (2) the claims are inextricably intertwined with his claims about improper treatment by the staff following the bed's collapse; and (3) the claims encompass a claimed departure from accepted standards of safety.

### Claimed Departure from Accepted Standards of Safety

In support of its argument that Beal's claims encompass a claimed departure from accepted standards of safety, Christus relies on the Texas Supreme Court's recent decision in *Diversicare General Partner, Inc. v. Rubio*, which dealt with the characterization of safety violation allegations under the Medical Liability and Insurance Improvement Act ("MLIIA"), chapter 74's predecessor. *See* 185 S.W.3d 842, 855 (Tex.2005). In *Diversicare*, Maria Rubio, through her daughter as next of friend, sued her nursing home for injuries that occurred from two alleged falls and for alleged sexual assaults against her by another nursing home patient. *Id.* at 845. The sexual assaults allegedly took place nearly five and one-half years before her suit was filed. *Id.* Diversicare moved for summary judgment on all of Rubio's claims arising from the alleged sexual assaults, arguing that the MLIIA's two-year statute of limitations barred recovery on her claims. *Id.* Rubio argued that because her claims were not health care liability claims under the MLIIA, they were governed by the general statute of limitations for personal injury claims, which tolls the statute of limitations for mental incapacity. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.001(b) (Vernon 2002), § 16.003 (Vernon Supp.2006).

A majority of the Texas Supreme Court held that Rubio's claims were MLIIA claims under the safety element of the statute because the supervision of Rubio and the patient who assaulted her were "inseparable from the accepted standards of safety applicable to the nursing home...." *Diversicare*, 185 S.W.3d at 855. The relevant statute in effect read:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim

or cause of action sounds in tort or contract.

Act of May 30, 1977, 65th Leg., R.S., ch 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, *repealed and codified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 864, 884 (hereinafter, "former art. 4590i § 1.03(a)(4)").[4] The majority reasoned that a nursing home's provision of professional supervision, monitoring, and protection of the patient population necessarily implicated standards of safety under the MLIIA, and it noted that "the Legislature's inclusion within the scope of the MLIIA of claims based on breaches of accepted standards of 'safety' expands the scope of the statute beyond what it would be if it only covered medical and health care." *Diversicare*, 185 S.W.3d at 855.

Appellant also directs our attention to this court's original opinion in *Marks v. St. Luke's Episcopal Hospital. See* 177 S.W.3d 255 (Tex.App.-Houston [1st Dist.] 2005), *vacated,* 193 S.W.3d 575 (Tex.2006). In that case, Marks was injured when, while seated at or near the foot of his hospital bed, he attempted to use the footboard to push himself up to a standing position and the footboard fell off, causing him to fall to the floor. *See Marks v. St. Luke's Episcopal Hosp.,* 229 S.W.3d 396, 398–99 (Tex.App.-Houston [1st Dist.] 2007, no pet. h.) (mot. for en banc reconsideration filed). This court originally held that Marks's claims about the bed related to premises liability, not medical liability. *Id.* Subsequent to that opinion, the Texas Supreme Court issued *Diversicare*, and, on petition by St. Luke's, vacated this court's opinion and remanded the cause for further consideration in light of *Diversicare*.[5]

*See id.* On remand, the majority held that Marks's claims were health care liability claims under the MLIIA because "the failure to provide a safe environment and the negligent assembly of the bed are complaints of a breach of the accepted standards of safety." *Id.* at 402.

The instant case is governed by Chapter 74 of the Civil Practice and Remedies Code, which contains different language than the superseded statute at issue in *Diversicare* and *Marks.* Under the current statute, as amended and codified, a health care liability claim is defined as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, *or safety or professional or administrative services directly related to health care,* which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13) (Vernon 2005) (emphasis added).

The instant case is legally distinguishable from *Diversicare* and *Marks.* The MLIIA definition of a health care liability claim included claims not only for treatment or lack of treatment, but also claims for "other claimed departure[s] from accepted standards of *medical care or health care or safety.*" *See* former art. 4590i § 1.03(a)(4) (emphasis added); *see also Diversicare*, 185 S.W.3d at 855 ("[T]he Legislature's inclusion within the scope of the MLIIA of claims based on breaches of accepted standards of 'safety' expands the scope of the statute beyond what it would be if it only covered medical and health

---

4. The current version may be found at section 74.001(a)(13) of the Texas Civil Practice and Remedies Code.

5. *See Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842 (Tex.2005).

care."). Under the current statute, the definition of a health care liability claim still includes claims for treatment or lack of treatment; however, the part referring to "other claimed departure[s]" has been amended to read "other claimed departure[s] from accepted standards of medical care, or health care, or *safety or professional or administrative services directly related to health care.*" *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (emphasis added).

Since the enactment of Chapter 74, only one court has analyzed the difference between former article 4590i section 1.03(a)(4) and current section 74.001(a)(13). *See Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 774–75 (Tex.App.-Corpus Christi 2006, pet. filed). In *Stradley*, the Corpus Christi Court of Appeals held that, based on a grammatically correct reading of the statute,[6] a safety claim under Chapter 74 can be categorized as a health care liability claim "only when it is against a health care provider or physician for a claimed departure from accepted standards of safety *directly related to health care.*" *Id.* at 775 (emphasis added). In determining that the additional language "directly related to health care" modifies the word "safety," the court stated:

> Claims involving "safety or professional or administrative services" constitute the final type of possible health care liability claims contemplated by the statute. These peripheral claims are not separated by commas, they are only separated by the disjunctive term "or," and therefore fall into the same class of claims. The phrase appearing right after the peripheral claims is "directly related to health care." Both the peripheral claims and the latter phrase are confined with each other by commas. Because we are mindful of the rules of grammar when reading a statute, we find the peripheral claims are tempered by the phrase "directly related to health care" because it appears immediately after that class of claims.

*Id.* (citations omitted).

We agree with the *Stradley* court's reading of the statute and adopt its interpretation. We hold, therefore, that a safety claim under Chapter 74 can be categorized as a health care liability claim only when it is against a health care provider or physician for a claimed departure from accepted standards of safety *directly related to health care.* As the *Stradley* court concluded, to hold otherwise and to find that all safety claims against health care providers and physicians are health care liability claims, regardless of whether they directly relate to health care, "would be an arbitrary and legislatively unauthorized expansion of the health care liability statute." *See Stradley*, 210 S.W.3d at 775; *see also Diversicare*, 185 S.W.3d at 867 (O'Neill, J., dissenting) ("When it recently amended the definition of 'health care liability claim,' the Legislature clarified that claims falling under the statute must relate to the actual provision of health care."); *but see Diversicare*, 185 S.W.3d at 861 n. 4 (Jefferson, C.J., concurring in part, dissenting in part, and concurring in judgment) ("It is clear under the revised statute that claims for 'professional or administrative services' must be 'directly related to health care'; however, there is no indication that claims involving 'safety' must also relate to health care."). Thus, we must determine whether the underlying nature of Beal's claims are safety claims that *directly relate to health care.*

---

6. According to the Code Construction Act, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005).

Christus argues that a safe bed directly relates to the health care Christus provided to Beal because sleeping on the premises was an integral part of the treatment program offered to Beal and was an absolute necessity to his recovery. In support of its position, Christus cites *Espinosa v. Baptist Health System*. *See* No. 04–05–00131–CV, 2006 WL 2871262 (Tex.App.-San Antonio Oct. 11, 2006, pet. denied) (mem. op.). In that case, Espinosa sued Baptist Health System for injuries he allegedly sustained when the trapeze lift device over his hospital bed suddenly became detached as he was holding onto it, causing him to fall back on the bed. *Id.* at *1. In examining the underlying nature of his claim, the San Antonio Court of Appeals stated that Espinosa had "alleged a failure to properly assemble and install, as well as a failure to inspect, supervise and maintain, a device ordered by his physician for his continued medical care, and assembled and utilized by hospital staff in accordance with the physician's orders." *Id.* at *2. These allegations, the court held, "notwithstanding the use of premises liability language, amount[ed] to a claimed departure from the accepted standards of medical or health care." *Id.* The court also held that use of the trapeze lift device was an "inseparable part of the rendition of medical services to Espinosa." *Id.* at *4. Espinosa's physician had ordered use of the trapeze lift device as part of Espinosa's medical care; was of the professional medical opinion that it was necessary to Espinosa's medical treatment; and had a plan in place for Espinosa to use the device whenever he moved in and out of his hospital bed. *Id.* Moreover, the device had been assembled and attached by a nurse and an orthopedic technician, both of whom were relying on the doctor's orders in the use of the device for Espinosa's medical care. *Id.*

Christus's reliance on *Espinosa* is misplaced. In *Espinosa*, the trapeze lift device was a specialized medical device that, based on his doctor's professional opinion, was necessary for Espinosa's continued medical care and required assembly by a nurse and an orthopedic technician according to the doctor's orders. Additionally, the doctor had put in place a plan for Espinosa to use the device whenever he moved in and out of his hospital bed. Here, no evidence shows that Beal's collapsed bed is a specialized medical device. Further, no evidence shows that its use had been ordered by a doctor or any of the professional staff at Christus for a specific medical purpose, that its assembly or maintenance required any specialized medical or technical knowledge, or that it contributed to Beal's treatment in any way other than to provide him a place to sleep at night.

Appellant also cites *Shults v. Baptist St. Anthony's Hospital Corp.* and claims that it is important because the Amarillo Court of Appeals "went to great lengths to examine whether there was any evidence that the subsequent treatment of the laceration on [Shults's] foot caused his resulting infection." *See* 166 S.W.3d 502, 505–06 (Tex. App.-Amarillo 2005, pet. denied). In that case, Shults was admitted to Baptist St. Anthony's Hospital for a surgical procedure on his right leg. *Id.* at 503. In preparation for surgery, he was instructed to take a shower. *Id.* After his shower and while returning to his bed, Shults noticed a trail of blood leading from the bathroom to his bed. *Id.* A nurse bandaged his injury, but the cut to his foot became infected and ultimately required surgical intervention. *Id.* Shults filed suit against St. Anthony's, alleging that he had been injured when he stepped on a sharp paint chip on the bathroom floor. *Id.*

In its successful motion for summary judgment, St. Anthony's argued that Shults's claims were not health care liabili-

ty claims, but ordinary negligence claims or premises liability claims, and thus barred by the statute of limitations. *Id.* at 504. The Amarillo Court of Appeals agreed and held that the presence of a sharp paint chip could not be considered "in any way an inseparable part of the medical services rendered to Shults." *Id.* at 505. In coming to this conclusion, the court did not examine whether there was any evidence that subsequent treatment of Shults's injury caused the resulting infection, as Christus argues. Rather, it conducted such an analysis in response to St. Anthony's *alternative* argument that Shults had not produced any evidence of the essential elements of a health care liability claim. *Id.* at 505–06.

Christus also attempts to distinguish *Stradley.* *See* 210 S.W.3d 770. In that case, Stradley brought premises liability and negligence causes of action against Valley Baptist Medical Center, alleging that she was thrown to the floor and injured when a treadmill that she was using unexpectedly accelerated and the emergency stop-cord failed. *Id.* at 772. Stradley was a 78–year–old retiree with weight, hypertension, and mobility issues, and her primary care physician had "prescribed" exercise and referred her to a fitness center located on Valley Baptist's campus. *Id.* The Corpus Christi Court of Appeals held that Stradley's personal injury and negligence claims were not health care liability claims, but rather "personal injury claims of the most pedestrian nature." *Id.* at 775–76. In making its decision, the court rejected as "absurd" Valley Baptist's argument that Stradley's claims were health care liability claims because Stradley's physician had recommended exercise for her ailments. *Id.* at 776. The court stated, "While exercise has a salutary effect on one's health, in most situations a doctor's recommendation of regular exercise is no more related to the rendition of

health care than the automobile ride one makes for a doctor's appointment." *Id.* In other words, the exercise that the doctor had "prescribed" did not *directly relate* to the health care he was providing to Stradley for her weight, hypertension, and mobility issues. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).

■ In its response to the concurring and dissenting opinions in *Diversicare,* the majority of the supreme court made it clear that "[t]here may be circumstances that give rise to premises liability claims in a healthcare setting that may not be properly classified as health care liability claims ..." such as "an unlocked window that gave an intruder access to the [health care] facility or a rickety staircase that gave way under [a patient's] weight." *Diversicare,* 185 S.W.3d at 854. Here, Beal is complaining about an ordinary bed that gave way under his weight, a circumstance that gives rise to a premises liability claim in a health care setting that may not be properly classified as a health care liability claim. *See id.* We hold, therefore, that the provision of a safe bed by Christus does not directly relate to Christus's treatment of Beal for his drug addiction. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13); *Stradley,* 210 S.W.3d at 775. Thus, Beal's claims cannot be characterized as health care liability claims under the safety element of the statute. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13).

### Improper Treatment by Staff

Christus also argues that because Beal's claims about the bed are "inextricably intertwined" with his claims about improper treatment by the staff following the bed's collapse, Beal's claims about the bed constitute health care liability claims.

During his deposition, counsel for Christus questioned Beal about Christus's response to his fall:

[CHRISTUS]: It seems to me that you're complaining a little bit about the staff making you get up when you were hurting and that sort of thing. Is that true?

[BEAL]: No, that's not what it was, no.

[CHRISTUS]: Okay. I'm trying to understand if that's part of your complaints in this lawsuit. Do you believe that you suffered any injury because of this staff requiring you to get up out of [the] bed that had fallen?

[BEAL]: Possibly.

[CHRISTUS]: Okay. And do you believe you suffered injury by the staff not calling an ambulance to come help you?

[BEAL]: Possibly.

[CHRISTUS]: Okay. And so you believe that it's possible that these events, that the staff not adequately taking care of you contributed to your injuries?

[BEAL]: Yes.

In support of its argument, Christus cites *Groomes v. USH of Timberlawn, Inc.* for the proposition that when complained of acts or omissions are inextricably intertwined with a patient's medical treatment, the claim qualifies as a health care liability claim. *See* 170 S.W.3d 802, 806 (Tex.App.-Dallas 2005, no pet.). In that case, Theresia Groomes, individually and as next friend of H.K., her minor son, sued USH of Timberlawn for false imprisonment, intentional infliction of emotional distress, and abuse of process when Timberlawn administered medication to H.K. without Groomes's permission and did not discharge H.K. upon her request. *Id.* at 803. Timberlawn filed a motion to dismiss, arguing that Groomes's claims were health care liability claims and should be dismissed for failure to file an expert report. *Id.* The trial court agreed and dismissed Groomes's claims. *Id.* The Dallas Court of Appeals affirmed the lower court's decision, explaining,

> The underlying nature of all of Groomes' claims against Timberlawn derive[s] from the doctors' decisions to administer medication and to discontinue H.K.'s discharge. As a result, the hospital's alleged acts or omissions are *inextricably intertwined* with the patient's medical treatment and the hospital's provision of medical care.

> ... [T]he trial court properly determined that Groomes' claims were health care liability claims ... because they arose "from health care provided to H.K. [and] that his admission, discharge, and discontinuance of discharge order were decisions made by physicians exercising their medical judgment."

*Id.* at 806 (emphasis added) (citations omitted).

In the instant case, Beal testified during his deposition that he may have possibly suffered injury because the staff made him get up out of the collapsed bed and did not call an ambulance, and that he believed that the staff's failure to properly care for him after his fall contributed to his injuries. However, in his original complaint, Beal alleged only that, on January 18, 2006, he was asleep in his bed at Christus when the bed collapsed, he fell to the floor, and, as a proximate result of the fall, he sustained injuries or suffered an aggravation of a pre-existing condition. The collapse of the bed and his resulting fall, Beal alleged, were proximately caused by Christus's negligence. Nowhere in his petition does Beal make any allegations concerning Christus's response to his fall.

While Beal may believe that the staff's response to his fall contributed to his injuries, this is not the proper inquiry; the proper inquiry under *Groomes* is whether Beal's claims derive from Christus's provi-

sion of medical services for drug rehabilitation. *See id.* at 806; *see also Shults,* 166 S.W.3d at 504–05. Here, the underlying nature of Beal's claims against Christus, as pled, derives from the bed's collapse and not from Christus's provision of medical services for drug and alcohol rehabilitation. Furthermore, Christus has cited no health care regulations or directives peculiar to its status as a drug and alcohol treatment center nor any industry safety standards that were allegedly violated in this instance and that would have justified expert testimony. *See Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 544 (Tex. 2004) (noting that one consideration in determining whether alleged act or omission is inseparable part of rendition of health care is whether proving claim would require specialized knowledge of a medical expert). Thus, given Beal's pleadings, Christus's argument that Beal's claims about the bed are "inextricably intertwined" with his claims about improper treatment by the staff following the bed's collapse is without merit.

We overrule Christus's second issue.

### Conclusion

We affirm the trial court's order denying Christus's motion to dismiss.