NUMBER 13-10-00392-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

TOXICOLOGY
ASSOCIATES, INC.,                                       Appellant,

 

v.

 

SYLVIA AGUIRRE,
INDIVIDUALLY AND AS NEXT 

FRIEND OF STACY AGUIRRE
AND DYLAN AGUIRRE,                  Appellee.

                                                                                                                     
  

 

On appeal from the 117th
District Court 

of Nueces County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Perkes 

Memorandum Opinion by
Justice Rodriguez

 

This is an accelerated, interlocutory
appeal from the trial court's order denying appellant Toxicology Associates,
Inc.'s motion to dismiss the alleged health-care-liability claim of appellee
Sylvia Aguirre, individually and as next friend of Stacy Aguirre and Dylan
Aguirre, because she failed to file a timely expert report as required by the
Texas Medical Liability Act (TMLA).  See Tex. Civ. Prac. & Rem. Code. Ann. § 74.351(a) (Vernon
Supp. 2009) (providing that a plaintiff asserting a "health care liability
claim" must serve a medical expert report upon each party's attorney no
later than the 120th day after the date the original petition was filed). 
Sylvia responds that she is not required to provide an expert report because
her claim is not a health care liability claim, but instead is based on Toxicology
Associates' breach of chapter 164 of the Texas Health and Safety Code and is
actionable under the Texas Deceptive Trade Practices Act (DTPA).[1] 
See Tex. Health & Safety Code
Ann. §§ 164.010(1), 164.013 (Vernon 2010).  By a single issue,
Toxicology Associates contends that Sylvia's health care liability claim must
be dismissed because she failed to file a 120-day expert report.  See Tex. Civ. Prac. & Rem. Code. Ann. §
74.351(a).  We reverse the trial court's order, render judgment dismissing
Sylvia's claim against Toxicology Associates, and remand to the trial court for
determination of reasonable attorneys' fees and court costs incurred by
Toxicology Associates.

I.  Background[2]

            Toxicology
Associates obtained permits, pursuant to chapter 466 of the Texas Health and
Safety Code, to operate its facilities as narcotic drug treatment programs.  See
Tex. Health & Safety Code Ann. §§
466.021-.024 (Vernon 2010); see also Tex. Loc. Gov't Code Ann. § 245.001 (Vernon 2005) (defining
"permit" broadly as "a license, certificate, approval,
registration, consent, permit, contract … or other form of authorization required
by law, rule, regulation, or ordinance that a person must obtain to perform an
action or initiate, continue, or complete a project for which the permit is
sought").  From at least March 3, 2007 to May 27, 2008,[3]
John Aguirre, Sylvia's husband and Stacy and Dylan's father, received
Methadone treatment at certain Toxicology Associates' locations, one in Corpus
Christi, Texas, and another in Houston, Texas, to be weaned off of prescription
medications.  According to the medical examiner's report, John's cause of death
on June 30, 2008, was opiate toxicity.

On June 2, 2009, Sylvia notified
Toxicology Associates that she was asserting a claim, which, at the time, she
described as a DTPA claim.  See Tex.
Bus. & Com. Code Ann. § 17.505 (Vernon 2002).  That same day, Sylvia
filed suit against Toxicology Associates claiming advertising or marketing
violations, described as breach of warranties, and alleging that representations
made in its literature wrongly induced John to use Toxicology Associates'
services.  Toxicology Associates subsequently filed an amended answer
describing the lawsuit as one "of alleged medical negligence which the
Plaintiffs are attempting to recast as a Deceptive Trade Practices Act
case."  On December 15, 2009, Sylvia filed a first amended petition
emphasizing the breach of warranty and DTPA language and removing the word
"negligence" from the body of her petition.

            On December 28, 2009, Toxicology Associates
filed a motion to dismiss arguing that Sylvia's claim should be dismissed
because no expert report had been filed.  The trial court heard the motion on
January 24, 2010, and between January 21, 2010 and June 24, 2010, a volley of
responses and replies were filed, as allowed by the trial court. On June 24,
2010, the trial court denied Toxicology Associates' motion to dismiss.  This
accelerated, interlocutory appeal followed.  See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon
2008) (permitting appeal of an interlocutory order denying all or part of a
motion to dismiss for failure to file an expert report in a health care
liability claim); Tex. R. App. P. 28.1(a)
(stating that appeals from interlocutory orders are accelerated).

II.  Standard of Review

            The TMLA requires the dismissal of a suit
asserting health care liability claims against a health care provider if the
plaintiff does not timely file an expert report pursuant to section 74.351(b)
of the Texas Civil Practice and Remedies Code.  Yamada v. Friend, No.
08-0262, 2010 Tex. LEXIS 1012, at *8 (Tex. Dec. 17, 2010) (citing Tex. Civ. Prac. & Rem. Code Ann. §
74.351).  A party may appeal an order that denies all or part of the relief
sought by a 74.351(b) motion.  See Tex.
Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(9); 74.351(b).

We ordinarily review a trial court's
denial of a motion to dismiss for failure to comply with the expert report
requirement for abuse of discretion.  See Jernigan v. Langley, 195
S.W.3d 91, 93 (Tex. 2006) (per curiam); Am. Transitional Care Ctrs. v. Palacios,
46 S.W.3d 873, 877 (Tex. 2001).  However, "whether a claim is a health
care liability claim pursuant to section 74.351 is a question of law and is
reviewed de novo."  Christus Spohn Health Sys. Corp. v. Sanchez,
299 S.W.3d 868, 873 (Tex. App.–Corpus Christi 2009, pet. denied) (citing Valley
Baptist Med. Ctr. v. Stradley, 210 S.W.3d 770, 773 (Tex. App.–Corpus
Christi 2006, pet. denied)).

III. 
Discussion

            Toxicology
Associates contends generally that dismissal is mandated because Sylvia
asserted a health care liability claim and failed to file a 120-day expert
report.  More specifically, Toxicology Associates argues that Sylvia's claims
are health care liability claims because (1) Toxicology Associates is a health
care provider, and (2) the nature of her claim concerns the care and treatment
rendered to John for narcotic dependency.

A.  Health Care Provider

Toxicology Associates first asserts that
this claim has been brought against it as a health care provider.  A
"health care liability claim" is a cause of action against a health
care provider for "treatment, lack of treatment, or other claimed
departure from accepted standards of medical care or health care or safety
which proximately results in injury to or death of the patient, whether the
patient's claim or cause of action sounds in tort or contract."  Tex. Civ. Prac. & Rem. Code Ann. §
74.001(a)(13) (Vernon 2005).  The TMLA provides that a health care provider is
"any person, … corporation, facility or institution duly licensed,
certified, registered or chartered by the State of Texas to provide health
care.…"  Id. § 74.001(a)(12)(A) (Vernon 2005).  "Health
care" is defined as "any act or treatment performed or furnished, or
which should have been performed or furnished, by any health care provider for,
to, or on behalf of a patient during the patient's medical care, treatment, or
confinement."  Id. § 74.001(a)(10) (Vernon 2005).

 

In this case, each Toxicology Associates
facility obtained a permit to treat narcotic addiction.  See Tex. Health & Safety Code Ann. § 466.024. 
Under section 466, a "facility" is defined, in relevant part, as
"an outpatient clinic" and "any other location in which a
structured narcotic dependency program is conducted."  Id. §
466.002(6) (Vernon 2010).  In addition, "[t]reatment of narcotic addiction
by permitted treatment programs is recognized as a specialty chemical
dependency treatment area using the medical model."  Id. §
466.001(b) (Vernon 2010).

Toxicology Associates asserts that it is
a health care provider—treating narcotic addiction through the use of "the
medical model."  See id.  It argues that the permit obtained by
each facility evidences the fact that Toxicology Associates is engaged in the
treatment of patients and that it provides health care to its patients, one of
whom was John Aguirre.  It also asserts that it is a health care provider as
evidenced by the records it produced in this case, records which show John was
seen by physicians, counselors, and nurses at Toxicology Associates' clinics
and which it identifies as John's medical records.  And, the Houston Court of
Appeals has held that an inpatient drug and alcohol treatment center licensed
under chapter 464 of the health and safety code is a health care provider for
the purposes of chapter 74.  See Christus Health v. Beal, 240 S.W.3d
282, 287 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

We find Toxicology Associates' arguments
and the guidance provided by Christus Health persuasive.  However, we
need not reach its health-care-provider argument because Sylvia does not
dispute Toxicology Associates' status as a health care provider for the
purposes of asserting a health care liability claim in this case and did not do
so in the trial court.  Rather, on appeal, Sylvia responds only that Toxicology
Associates is a chemical dependency facility as prescribed by section 462.001
of the health and safety code and, as such, is subject to section 164.010's
marketing provisions and any violations thereof.  See Tex. Health & Safety Code Ann. § 164.010; id. § 462.001 (Vernon 2010).  Sylvia does
not challenge Toxicology Associates' position that John was provided treatment
by health care providers at its clinics or that the facility is a health care
provider.  Therefore, on this record, we treat Toxicology Associates, a
facility permitted under chapter 466, as a health care provider.  See id. §§
466.021-.024; Tex. Civ. Prac.
& Rem. Code Ann. § 74.001(a)(12)(A).

B.  Nature of the Claim

            Toxicology
Associates also argues that Sylvia's claim is a health care liability claim
because the nature of her claim concerns the care and treatment rendered to
John.  We agree.

A claim is a health care liability claim
governed by chapter 74 if it alleges a breach of accepted standards of health
care or if the claim is inseparable from the rendition of health care.  Marks
v. St. Luke's Episcopal Hosp., 319 S.W.3d 658, 664 (Tex. 2010) (plurality
op.); Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 848 (Tex.
2005); see, e.g., Earle v. Ratliff, 998 S.W.2d 882, 885, 893 (Tex. 1999)
(setting out that a surgeon's statements that a patient needed surgery, would
get "95% better" and able to return to work, and that devices being
implanted were safe and permanent could not be brought under the DTPA, but were
medical negligence claims); MacGregor Med. Ass'n v. Campbell, 985 S.W.2d
38, 40-41 (Tex. 1998) (per curiam) (holding that a provider's failure to advise
a patient of possible complications in his condition and a misrepresentation
that the patient "was medically fine" indicated a cause of action for
medical malpractice); Gormley v. Stover, 907 S.W.2d 448, 449-50 (Tex.
1995) (per curiam) (concluding that representations that a surgeon "could
perform the surgery with no problems, that a skin graft would work as well as a
bone graft, that [the patient's dentures] would fit well and . . . she would
have no problems wearing [them]" all had to do with whether surgeon's
selection of surgical procedure and performance of it met standard of care for
dentists in such circumstances); Walden v. Jeffery, 907 S.W.2d 446, 448
(Tex. 1995) (per curiam) (deciding that the marketing of dentures was
inseparable from the profession of dentistry and the medical services provided
and, therefore, was "an inseparable part of [the defendant's] rendition of
medical services"; thus, the plaintiff's claim was a health care liability
claim subject to the requirements of chapter 74).

"Whether a claim is a health care
liability claim depends on the underlying nature of the claim being
made."  Yamada, 2010 Tex. LEXIS 1012, at *9 (citing Garland
Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex. 2004)).  In determining a
claim's underlying nature, we consider the duties allegedly breached as well as
the alleged wrongful conduct, see Rubio, 185 S.W.3d at 851, looking to
the factual allegations to determine the gravamen of the complaint and not being
bound by the form of the pleading or how complaints are labeled.  See id;
Sci. Image Ctr. Mgmt. v. Brewer, 282 S.W.3d 233, 237-38 (Tex. App.–Dallas
2009, pet. denied) ("The Texas Supreme Court repeatedly has held that plaintiffs
cannot, through artful pleading, avoid the strictures … [of] chapter 74 by
recasting health care liability claims as other causes of action[,]"
however, while not being "bound by Brewer's pleadings, a review of her
allegations [in her statement of facts on appeal] is helpful in evaluating
whether her allegations … are health care liability claims recast as a DTPA
action.") (citations omitted); see also Yamada, 2010 Tex. LEXIS 1012,
at *2, 13 (concluding that claims against a health care provider based on one
set of underlying facts cannot be brought as both health care liability claims
subject to the TMLA and ordinary negligence claims not subject to the TMLA
because the TMLA and its procedures and limitations would be effectively
negated); but see Sorokolit v. Rhodes, 889 S.W.2d 239, 242-43 (Tex.
1994) (concluding that a physician's explicit promise that his patient's
appearance following cosmetic surgery would be identical to a specific magazine
photograph of a nude model did not involve negligence and was, therefore,
actionable under the DTPA).

            In
her petition, Sylvia claimed that the following statements found in Toxicology
Associates' literature induced John to use the services of the facility:  (1)
"Methadone taken under a doctor's care causes no harm to any of your body
organs and does not change your ability to think clearly"; (2)
"Properly prescribed Methadone is not intoxicating and does not create
euphoria, sedation[,] or an analgesic effect"; and (3) "Methadone is
medically safe."  She further asserted that these alleged warranties were
breached because "none of the results guaranteed were delivered.  The
results guaranteed in [Toxicology Associates'] literature did not occur." 
In addition, Sylvia asserted that Toxicology Associates "wrongfully
disseminat[ed] information concerning the toxicity of Methadone," and
"wrongfully advis[ed] the Deceased concerning the use of Methadone."[4] 
Sylvia asserted that these allegedly unlawful acts and practices were a
producing cause of damages and, without identifying specific damages, claimed
that the suit was to recover the amount of money which would fairly and
reasonably compensate her for those damages.

In
her pleadings, Sylvia also asserted, however, that John's cause of death was
"Opiate (Methadone) Toxicity"[5]
and claimed the following:

On multiple occasions,
as shown in [Toxicology Associates'] internal records, [John] stated to [Toxicology
Associates] that he was not living a healthier and better life as was
guaranteed.  His ability to think clearly was also impared [sic] and he did
feel "high" or "drugged."  At one point [Toxicology
Associates] was forced to call 911 to transport John … to the hospital due to
his "drugged" state.

 

According
to her petition, John asked to be "'weaned off' of [M]ethadone in order to
function in his day to day life," which "had gotten worse, not better
since being on [Toxicology Associates']  [M]ethadone."  Sylvia claimed, in
her petition, that Toxicology Associates again "warranted to John …
'Methadone taken under a doctor's care causes no harm to any of your
body organs and does not change your ability to think clearly.'"  Sylvia
alleged that Toxicology Associates "never decreased his dosage in the face
of failed guarantees, but rather, continued with the same 190 milligram dosage,
daily until" his death.  She also asserted that Mr. Aguirre's "death
resulted form [sic] the Defendants willful act or omission, which intitles
[sic] [him] to exemplary damages."

In addition to the above-mentioned pleadings, Sylvia's
attorney sent a notice letter to Toxicology Associates.  The letter appears in
the record as an exhibit to one of Sylvia's responses to Toxicology Associates'
motion to dismiss.  While referencing statements made in the literature and
their inducement effect, the following portions of the letter referring to
Toxicology Associates' negligence are also helpful in our evaluation:

Please be advised that we
represent the widow and children of John Aguirre.  Mr. Aguirre was a patient at
your clinic.  He was in treatment at your establishment for two years.…

 

After consulting Mr. Aguirre's
medical records as provided by your clinic, he exhibited all the intoxicating
effects previously mentioned.…  [U]p until his time of death he was
administered 190 milligrams of Methadone daily, with complete disregard to his
symptoms [and his request to be weaned off of Methadone].

 

Mr. Aguirre died as a result of the
"care" provided by your clinic.  His cause of death was Opiate
Toxicity.  The only Opiate in his system at the time was Methadone as provided
by your clinic, under your care.…  As you can imagine, the damages caused by
your actions are immense.  Please present this letter to your insurance
carrier.  If you do not have insurance please contact our offices that we may
address this matter, and make whole Mr. Aguirre's widow and children.  This
letter is sent in adherence to the Texas Deceptive Trade Practices Act.

 

Furthermore, it was not until Sylvia filed her response to
Toxicology Associates' motion to dismiss that she asserted the claim that she
now argues on appeal:  that Toxicology Associates violated chapter 164 through
its misleading marketing practices.  See Tex.
Health & Safety Code Ann. §
164.010(1).  On appeal, Sylvia argues that her claim against Toxicology
Associates is for its violation of the Treatment Facilities Marketing and Admission
Practices Act found in chapter 164 of the health and safety code, a claim that
can be brought through the DTPA.[6]  See id. §§
164.010(1), 164.013.  Sylvia specifically refers us to section 164.010 which
provides, in relevant part, the following:  "It is a violation of this
chapter, in connection with the marketing of mental health services, for a
person to:  (1) advertise, expressly or impliedly, the services of a treatment
facility through the use of (A) promises of cure or guarantees of treatment
results that cannot be substantiated; or (B) any unsubstantiated claims
.…"  Id. § 164.010(1).  This language, however, is absent from her
petition.  Rather, the factual allegations in Sylvia's petition involve
"undelivered" DTPA warranties that allegedly induced John to use
services provided by Toxicology Associates and the wrongful dissemination of
information and wrongful advice given by Toxicology Associates concerning the
toxicity of Methadone.

Nonetheless, Sylvia now argues that the alleged breach was not
in the standard of care provided by Toxicology Associates, but in its marketing
practices.  See id.  Sylvia contends that the duties imposed in chapter
164 are not related to the care provided to each patient, but to the marketing
and advertising used to induce consumers to utilize its services.  We agree
that, given certain factual allegations, a party's claim that a mental health
facility and a chemical dependency treatment facility violated section 164 of
the health and safety code could survive.  See id. § 164.002 (Vernon
2010) ("The purpose of this chapter is to safeguard the public against
fraud, deceit, and misleading marketing practices and to foster and encourage
competition and fair dealing by mental health facilities and chemical
dependency treatment facilities by prohibiting or restricting practices by which
the public has been injured in connection with the marketing and advertising of
mental health services and the admission of patients.").  However, we do
not agree that the facts and claims alleged in this case support such a cause
of action.

The basis for Sylvia's claim lies in her
allegations of negligence by Toxicology Associates, negligence in the care and
advice provided to John as part of his treatment at its clinics in Houston and
Corpus Christi.  In her notice letter, Sylvia acknowledged that John died as a
result of the "care" provided at Toxicology Associates' clinic. 
Sylvia sets out in her petition, as well as in other documents, that the
personnel at the facilities failed to listen to John when he complained about
not living a healthier and better life and about feeling "high" or
"drugged" while on Methadone and asked to be weaned off of
Methadone.  Sylvia alleges that Toxicology Associates "never
decreased his dosage in the face of failed guarantees, but rather, continued
with the same 190 milligram dosage, daily until" his death.  And
it is undisputed that the cause of death was opiate toxicity.  These
allegations and undisputed facts support a claim that John's death arose out
of the allegedly wrongful manner in which Toxicology Associates conducted
John's Methadone treatment.

Moreover, although the complained-of
statements in the literature may have induced John to participate in Toxicology
Associates' Methadone treatment program, Sylvia's allegations do not concern
damages caused by Toxicology Associates' marketing practices that allegedly
made unsubstantiated claims through its literature.  Sylvia cites no damages
related to her marketing-violation claim, such as the cost of John's
treatment.  Rather, her allegations concern damages allegedly caused by
Toxicology Associates' negligent treatment of John's prescription drug
addiction.  This is supported by her comment in the notice letter that the
damages caused by Toxicology Associates' actions are "immense."

Sylvia's claim derives from Toxicology
Associates' alleged negligent actions that were inextricably related to its
professional duty of treating John's drug addiction with Methadone, a claim
that is inseparable from the rendition of health care.  See Marks, 319
S.W.3d at 664.  The claim also derives from Toxicology Associates' alleged
breach of accepted standards of health care.  See id.  Regardless of
what Sylvia would like this case to be, it is a claim that the treatment
facility departed from an accepted health care standard.  Sylvia's
claim is dependent on a finding of negligence against Toxicology Associates—a
determination of whether Toxicology Associates, through its counselors, nurses,
or physicians, failed to meet the required standard of health care.  Therefore,
in our de novo review, we conclude that the essence of Sylvia's
claims is that Toxicology Associates committed medical negligence, and Sylvia
may not recast her claims as violations of chapter 164 in an attempt to avoid
the requirements of chapter 74.

Because it is undisputed that Toxicology
Associates is a health care provider and we have concluded that the nature of
Sylvia's claim concerns the care and treatment Toxicology Associates rendered
to John, her failure to file a 120-day expert report as required by the TMLA mandates
dismissal.  See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351.  We sustain Toxicology Associates' sole
issue.[7]

IV.  Conclusion

Accordingly, we reverse the trial
court's order denying Toxicology Associates' motion to dismiss, render judgment
dismissing Sylvia's claims against Toxicology Associates with prejudice, and
remand to the trial court for determination of reasonable attorneys' fees and
costs of court incurred by Toxicology Associates.

 

 

                                                                                         NELDA
V. RODRIGUEZ

                                                                                         Justice

 

Delivered
and filed the 31st 

day
of January, 2011.









[1] Throughout her earlier
pleadings, Sylvia referred to her claim as a Texas Deceptive Trade Practices
Act (DTPA) claim.  During the motion to dismiss proceedings and now on appeal,
Sylvia describes her claim as a violation of chapter 164 of the Texas Health
and Safety Code, which uses the DTPA as a vehicle for its enforcement.  See
Tex. Health & Safety Code Ann.
§ 164.010(1) (explaining that a person violates chapter 164 if he expressly
advertises the services of a treatment facility through the use of promises or guarantees
that cannot be substantiated or that are unsubstantiated claims), § 164.013 (setting
out that a person may bring suit under chapter 17 of the Texas Business and
Commerce Code for a violation of chapter 164 and a public or private right or
remedy prescribed by subchapter E (Deceptive Trade Practices and Consumer
Protection) of chapter 17 may be used to enforce chapter 64) (Vernon 2010).

 





[2] Because this is a
memorandum opinion and the parties are familiar with the facts, we will not
recite them here except as necessary to advise the parties of the Court's
decision and the basic reasons for it.  See Tex. R. App. P. 47.4.

 





[3] Sylvia stated in her
affidavit that John received doses of Methadone from Toxicology Associates at
its Corpus Christi, Texas location in 2006.

 





[4] In her original
petition, Sylvia claimed that Toxicology Associates was negligent when it
"wrongfully disseminat[ed] information concerning the toxicity of
Methadone," and "wrongfully advis[ed John] concerning the use of
Methadone."  In her amended petition, she asserted that these acts
violated the DTPA.

 





[5] Sylvia's original
petition set out that "[t]he cause of death was [o]piate [t]oxicity,
completely attributable to the build up [sic] of Methadone in [John's]
system."

 





[6] Also, in response to
Toxicology Associates' motion to dismiss, Sylvia asserted that Toxicology
Associates failed to disclose material facts concerning John's purchase of a
product and that Toxicology Associates' "brochure does not state that
Methadone itself is addictive."





[7] By a second
sub-issue, Toxicology Associates argues that Sylvia's claims cannot be asserted
under the DTPA because (1) the TMLA prohibits DTPA claims against health care
providers and (2) the DTPA itself excludes a lawsuit of this nature—a lawsuit
involving personal injury, survival, and wrongful death claims.  Having
concluded that Sylvia's claims are health-care-liability claims and subject to
chapter 74, we need not address Toxicology Associates' remaining sub-issue as
it is not dispositive of this appeal.  See Tex. R. App. P. 47.1.