Affirmed in
Part, Reversed and Remanded, and Opinion filed November 23, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00932-CV



Susan E.
Appell, ExecuTrix of the Estate of Rodney Appell, M.D., Deceased, Appellant 

v.

Shari Muguerza
and Cyrene Muguerza, Appellees 



On Appeal from
the 80th District Court

Harris County, Texas

Trial Court
Cause No. 2008-09147



 

OPINION 

A doctor’s patient and her mother sued the doctor
asserting claims for assault based on the doctor’s alleged physical assault of
the patient and her mother in an examination room at the doctor’s office.  The
plaintiffs allege that the doctor punched his patient in the nose and mouth,
violently threw her to the ground, and violently shoved her mother.  Based on
their assertion that the claims are not health care liability claims, the plaintiffs
did not file an expert report under section 74.351 of the Texas Civil Practice
and Remedies Code.  After the doctor died, the executrix of his estate was
substituted as the defendant, and she moved for dismissal, asserting that these
claims are subject to section 74.351.  The trial court denied this motion, and
the executrix appeals this ruling.  We affirm in part and reverse and remand.

I.  Factual and Procedural
Background

Appellees/plaintiffs Shari Muguerza and Cyrene Muguerza
(collectively “the Muguerzas”) filed suit against Dr. Rodney Appell, alleging
that he assaulted them in an examination room in his medical office.  In
response, Dr. Appell asserted various defenses, including self-defense.  He
also moved to dismiss the Muguerzas’ claims based on their failure to file an
expert report under section 74.351,[1]
which Dr. Appell alleged applies to the Muguerzas’ claims.  In addition, Dr.
Appell asserted a counterclaim against Shari alleging the following:  

·       
Dr. Appell is a licensed physician specializing in the practice
of urology.

·       
On March 1, 2007, Shari presented herself to Dr. Appell’s medical
office requesting that Dr. Appell examine her for urologically related
complaints. 

·       
 Dr. Appell examined Shari in the presence of her mother and one
of Dr. Appell’s medical assistants.  Following the urological examination, Dr.
Appell left the examination room while Shari got dressed.  

·       
Dr. Appell returned to the examination room to discuss his
medical findings and recommendations. Shortly after he started talking, Shari
launched an unprovoked assault on Dr. Appell by trying to hit him with her
fist, while cursing at him and telling him she was going to hurt him badly.  

·       
Dr. Appell defended himself from Shari’s blows, and his nurses
and assistants entered the room to assist and to control Shari.  

·       
During the scuffle, Shari bit Dr. Appell’s left hand, causing a
nasty skin tear. As a result of Shari’s assault, Dr. Appell experienced a
significant physical injury to his left hand that necessitated emergency
medical attention as well as inoculations against tetanus and other diseases.  

·       
Nothing Dr. Appell did or failed to do caused or contributed to
cause Shari’s unprovoked assault on him.  

·       
Shari intentionally, knowingly, or recklessly caused bodily
injury to Dr. Appell, for which Dr. Appell seeks to recover his medical
expenses and damages for pain and suffering.  

After Dr. Appell died, the Muguerzas amended their
petition, making similar allegations and claims but naming appellant Susan E.
Appell, Executrix of the Estate of Rodney Appell, M.D., Deceased (the
“Executrix”) as the defendant instead of Dr. Appell.  In their live petition
against the Executrix, the Muguerzas allege the following:

·       
On or about March 1, 2007, Shari and Cyrene sought medical
treatment at Dr. Appell’s medical office.

·       
Shari and Cyrene were escorted to an examination room.

·       
In the examination room, Dr. Appell assaulted Shari and Cyrene.

·       
Shari suffered physical and psychological injuries when Dr.
Appell punched Shari in the nose and mouth, and when Dr. Appell and “his
cohorts” threw her violently to the ground.  

·       
Cyrene suffered trauma when Dr. Appell violently shoved her into
a cabinet, cutting and injuring her arm, and then was forced to watch her
daughter being beaten and abused by Dr. Appell.

·       
Nothing the Muguerzas did or failed to do was a proximate cause of
the assault or resultant injuries or damages.

·       
Dr. Appell acted intentionally, knowingly, or recklessly.

·       
Dr. Appell made contact with Shari’s person and Cyrene’s person.

·       
Dr. Appell’s contact caused bodily injury to Shari and Cyrene.

·       
Shari and Cyrene suffered mental anguish, and Cyrene was
traumatized by having to observe the assault of Shari.

·       
Shari and Cyrene seek relief for past and future medical
expenses, past and future pain and suffering, past and future mental anguish,
pre-judgment interest, post-judgment interest, and court costs.

In response, the Executrix
did not assert a counterclaim; however, in her answer, she alleged that the
Muguerzas’ damages were the result of their voluntary actions.  The Executrix
also asserted as a defense the Muguerzas’ failure to file an expert report
under section 74.351.  Based on this failure, the Executrix filed a motion to
dismiss the Muguerzas’ claims.  In this motion, the Executrix asserted that the
Muguerzas’ claims were health care liability claims.  The Executrix also relied
upon Shari’s discovery responses.  In a response to a request for disclosure, when
asked to identify the legal theories and general factual bases of her claims,
Shari responded as follows:

Due to the
negligence of this Defendant, Plaintiff suffered injuries and continues to
suffer from the incident that makes [sic] the basis of this suit.  It is
expected that the testimony of Plaintiff as well as her treating physicians
will clearly set forth the negligence of this Defendant.

            In one of his interrogatories,
Dr. Appell asked Shari the following: “To the extent not included in your
Response to Rodney Appell, M.D.’s Request for Disclosure, with regard to the
incident made the basis of this suit, identify the act(s) and/or action(s), if
any, which you claim to have constituted assault.”  In her answer to this
interrogatory, Shari stated as follows:

Dr. Appell
aggressively jammed a catheter in my vagina causing significant pain.  When I
winced at the pain, he responded “Shut up! I have kids that are better patients
than you!”  He continued to physically attack both myself and my mother before
summoning his nurse, Susan Peterson.  Susan then entered the room and continued
the assault by grabbing my hair.  Because of the screaming, Mike, the janitor, entered
the room and detained me by pinning me on the floor while wrenching my arm
behind my back.

            Dr. Appell and
the Executrix both relied upon these discovery responses in their motions to
dismiss.  The trial court denied the motion in October 2009.  In a single
appellate issue, the Executrix challenges the trial court’s ruling.  She asserts
that the trial court erred in denying her motion to dismiss under section
74.351(b).[2]

II.  Analysis

Generally, we review a trial court’s order granting or denying a motion to
dismiss under section 74.351(b) under
an abuse-of-discretion standard.  See Wasserman v. Gugel, No.
14-09-00450-CV, 2010 WL 1992622, at *2 (Tex. App.—Houston [14th Dist.] May 20,
2010, pet. filed) (mem. op.).  However, when the issue presented requires
statutory interpretation or a determination of whether Chapter 74 applies to a
claim, that is a question of law to which we apply a de novo standard of
review.  Id .

To be subject to section 74.351, a claim must be a “health care liability
claim.” Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West
Supp. 2010).  This term has the following statutory
definition:

“Health care liability claim” means a cause of action
against a health care provider or physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care, or health
care, or safety or professional or administrative services directly related to
health care, which proximately results in injury to or death of a claimant,
whether the claimant’s claim or cause of action sounds in
tort or contract.

Id. § 74.001(a)(13)
(West 2005).  Whether a claim falls within this
definition requires an examination
of the essence or underlying nature of the plaintiff’s claim,
and we are not bound by the form of the pleading.  Diversicare
Gen. Partners, Inc. v. Rubio, 185 S.W.3d 842, 847 (Tex. 2005).  One alleges a departure
from accepted standards of medical care[3]
or health care[4]
if the act or omission made the subject of the claim is an inseparable part of
the rendition of medical services.  See Diversicare Gen. Partners, 185
S.W.3d at 848; Garland
Cmty. Hosp. v. Rose, 156 S.W.3d
541, 544 (Tex. 2004).  The necessity of expert testimony from a
medical or health care professional to prove a claim may also be an important
factor in determining whether a claim is an inseparable part of the rendition
of medical or health care services.  See Diversicare Gen. Partners, 185
S.W.3d at 848; Garland
Cmty. Hosp., 156 S.W.3d at 544.  When
the essence of a suit is a health care liability claim, a claimant cannot avoid the requirements of the legislature’s
statutory scheme through artful pleading.  See Diversicare Gen.
Partners, 185 S.W.3d at 851; Garland Cmty. Hosp., 156 S.W.3d at 543.

A.        What claims did the Muguerzas plead? 


Before determining whether their claims are health
care liability claims, we first must determine what claims the Muguerzas have
asserted.  Because no special exceptions have been sustained against the
Muguerzas’ petition, this court construes that pleading liberally in the
Muguerzas’ favor to include all claims that reasonably may be inferred from the
language used in the petition, even if the petition
does not state all the elements of the claim in question. See
Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 897 (Tex. 2000); London
v. London, 192 S.W.3d 6, 13 (Tex. App.—Houston [14th Dist.] 2005, pet.
denied).

To prevail on a claim for civil assault, the
plaintiff must establish the same elements required for criminal assault.  See
Kastner v. Gutter Mgmt., Inc., No. 14-09-00055-CV, 2010 WL 4457461, at *7
(Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet. h.) (mem. op.).  Therefore,
a person commits civil assault if he “intentionally, knowingly, or recklessly causes
bodily injury to another.” (hereinafter, “Bodily Injury Assault”).  Tex. Penal Code Ann. § 22.01(a)(1) (West
Supp. 2009); Kastner, 2010 WL 3010941, at *7.  A person also commits
civil assault if he “intentionally or knowingly causes physical contact with
another when the person knows or should reasonably believe that the other will
regard the contact as offensive or provocative.”  (hereinafter, “Offensive
Contact Assault”). Tex. Penal Code Ann.
§ 22.01(a)(1) (West Supp. 2009); Kastner, 2010 WL 3010941, at *7.  

In their petition, the Muguerzas’ make no reference
to any vaginal-catheterization procedure.  They do not specify what was transpiring
in the examination room when Dr. Appell allegedly assaulted the Muguerzas. 
They do not allege in their petition that Dr. Appell “aggressively jammed a
catheter in [Shari’s] vagina causing significant pain,” or that this act was an
assault, as stated in Shari’s discovery responses.  The Muguerzas’ petition
contains a general allegation that Dr. Appell assaulted the Muguerzas in the
examination room, and the Executrix has not lodged
any special exceptions.  Under the required liberal construction of the
Muguerzas’ petition, we conclude that Shari has pleaded claims for both Bodily
Injury Assault and Offensive Contact Assault based on the manner in which Dr.
Appell conducted the vaginal-catheterization procedure as well as the manner in
which he conducted his medical examination of Shari on the day in question
(hereinafter, “Medical Procedure Claims”).

The focus of the factual allegations in the Muguerzas’
live petition is an alleged unprovoked physical assault on the Muguerzas by Dr.
Appell while the Muguerzas were seeking medical treatment in an examination
room in Dr. Appell’s office.  The Muguerzas state that, during this alleged
assault, Dr. Appell punched Shari in the nose and mouth, violently threw her to
the ground, and violently shoved Cyrene into a cabinet.  Applying the liberal construction
rule, we conclude that the Muguerzas have pleaded claims for both Bodily Injury
Assault and Offensive Contact Assault based on an alleged unprovoked physical attack
on them by Dr. Appell at some point when they were in the examination room,
whether during the vaginal-catheterization procedure or at some other time
while the Muguerzas were in this room (hereinafter, “Attack Claims”).

B.        Are the Medical Procedure Claims health
care liability claims?  

In the Medical Procedure Claims, the Muguerzas do not
complain of Dr. Appell’s alleged punching of Shari and throwing her to the
ground or the alleged throwing of Cyrene into a cabinet.  Rather, in these
claims, the Muguerzas complain of Dr. Appell’s alleged acts or omissions
regarding the manner in which Dr. Appell conducted the vaginal-catheterization
procedure as well as the manner in which he conducted his medical examination
of Shari.[5] 
We conclude that the acts or omissions the Muguerzas allege in the Medical
Procedure Claims are an inseparable part of the rendition of medical services. 
See Wasserman,
2010 WL 1992622, at *3 (noting that complaint regarding doctor’s acts or
omissions that could be part of medical care would be health care liability
claims); Ramchandani v. Jiminez, 314 S.W.3d 148, 152–53 (Tex.
App.—Houston [14th Dist.] 2010, no pet.) (holding that claims in which
plaintiff complained of doctor’s acts or omissions in conducting medical
procedure were health care liability claims).  Therefore, the trial court erred
in denying the Executrix’s motion to dismiss as to the Medical Procedure
Claims.

C.        Are the Attack Claims health care
liability claims?  

1.         Are the alleged acts or omissions made
the subject of the Attack Claims an inseparable part of the rendition of
medical services?

In the Attack Claims, the Muguerzas allege that, while
they were in the examination room seeking medical treatment, Dr. Appell,
without provocation, physically attacked them by (1) punching Shari, (2)
violently throwing Shari to the ground, and (3) violently throwing Cyrene into
a cabinet.  Punching and violently throwing patients to the ground or into a
cabinet without provocation cannot reasonably be characterized as being part of
the medical services provided by a doctor.  We conclude that these alleged acts
or omissions are not an inseparable part of the rendition of medical services,
even though they allegedly took place in an examination room immediately after
the rendition of medical care.[6]
See Wasserman,
2010 WL 1992622, at *3 (holding that alleged sexual assault by surgeon of one
of his patients during a physical examination in the doctor’s office was not an
inseparable part of the rendition of medical services); Loaisiga v.
Cerda, No. 13-09-00666-CV, 2010 WL 3049086, at *4–5 (Tex. App.—Corpus
Christi Aug. 5, 2010, pet. filed) (mem. op.) (holding that alleged sexual assault by doctor of two patients during
medical examinations were not an inseparable part of the rendition of medical
services); Holguin v. Laredo Reg’l Med. Ctr., 256 S.W.3d 349, 353–54
(Tex. App.—San Antonio 2008, no pet.) (holding that alleged sexual assault by nurse of hospital patient was not
an inseparable part of the rendition of health care services);  Jones v.
Khorsandi, 148 S.W.3d 201, 205–6 (Tex. App.—Eastland 2004, pet. denied) (holding
that alleged sexual assault by emergency-room doctor
of patient was not an inseparable part of the rendition of medical services); see
also Buck v. Blum, 130 S.W.3d 285, 290–91 & n.6 (Tex. App.—Houston
[14th Dist.] 2004, no pet.) (concluding that alleged sexual assault by doctor
of patient during medical examination did not arise out of the course and scope
of the doctor’s employment and was not an inseparable part of the rendition of
medical services by the doctor).  

The Executrix cites a line
of cases holding that negligence claims against health care facilities for not
protecting patients in these facilities from assault are health care liability
claims.  See, e.g., Diversicare Gen. Partners, 185 S.W.3d at 851. 
These cases are not on point because the Muguerzas
are not suing any facility or alleging negligent failure to protect them
against assault.  See id. (emphasizing that the plaintiff’s claim was
not that the nursing home, through its employees and agents, committed the
sexual assault). The Muguerzas have sued only the doctor whom they allege
assaulted them.

            The Executrix relies
upon Vanderwerfer v. Beathard, a case in which the Fifth Court of
Appeals held that the plaintiff’s claim that the defendant doctor “rubbed her genitals”
during the course of a chiropractic examination was “inseparable from the
rendition of health care services” and was a health care liability claim.  See
239 S.W.3d 406, 408–9 (Tex. App.—Dallas 2007, no pet.).  Though the
plaintiff in Vanderwerfer asserted an assault claim against the
chiropractor who allegedly committed the assault, the Vanderwerfer court
concluded that the act or omission of which the plaintiff complained might have
been within the scope of the chiropractic examination that the plaintiff asked
the chiropractor to perform because the plaintiff sought treatment for pain
that went up to her upper thigh.  See id. at 408–9.  This case in not on
point as to the Attack Claims, in which the Muguerzas allege an unprovoked
physical attack that could not have been within the scope of the medical
services rendered by Dr. Appell.  Under no reasonable view of the Muguerzas’
allegations could it be argued that an unprovoked physical assault on the
Muguerzas would be required as part of Dr. Appell’s medical services as a
urologist.  The Vanderwerfer case is not on point.  See Wasserman, 2010 WL
1992622, at *3 (distinguishing Vanderwerfer).

            The Executrix also
cites Mata v. Calixto-Lopez.  See No. 04-06-00540-CV, 2007 WL
3003139, at*2 (Tex. App.—San Antonio Oct. 17, 2007, no pet.) (mem. op.).  In
that case a man arrested for driving while intoxicated alleged that a medical
provider at the county jail assaulted him by taking urine and blood samples
without his consent.  See id. at *1–2.  The Mata court concluded
that the case involved the issue of when a doctor can properly force an
intoxicated patient to give urine and blood samples needed for medical
clearance to enter a jail.  See id.  In the case under review, there is
no issue of whether it could be proper for Dr. Appell to engage in an
unprovoked physical assault of the Muguerzas. The Mata case is not on
point.[7]

            The Executrix
also points to Oak Park, Inc. v. Harrison, a case in which a patient at
a drug treatment center was allegedly slammed against a wall when nurses
physically restrained a psychological patient.  See 206 S.W.3d 133, 135
(Tex. App.—Eastland 2006, no pet.).  The injured patient sued the center
alleging it had been negligent in handling the psychological patient and in not
protecting the plaintiff from the patient. See id. at 135–36.  The Oak
Park case is not on point because the Muguerzas
are neither suing a facility nor alleging negligent failure to protect them
against assault.  

            Finally,
the Executrix asserts that Dr. Appell’s alleged conduct was “necessary, even
required, under the circumstances of a patient being in ‘significant pain’
during a medical procedure and a commotion erupting in the examination room.” 
But the conduct alleged by the Muguerzas is Dr. Appell’s unprovoked
physical attack of the Muguerzas by (1) punching Shari, (2) violently throwing
Shari to the ground, and (3) violently throwing Cyrene into a cabinet.  This conduct
is clearly not part of any medical examination, vaginal-catheterization
procedure, or any response to a commotion in the examination room.  

Because the alleged
unprovoked physical assault of the Muguerzas is not an inseparable part of the
rendition of medical services, the Attack Claims cannot
be health care liability claims on this basis.

2.         Are the Attack Claims health care
liability claims based on the part of the statutory definition dealing with an
alleged departure from accepted standards of safety?

            The
Executrix also asserts that the Muguerzas’ claims are health care liability
claims because they involve an alleged departure from “accepted
standards of . . . safety.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). 
Both Chapter 74 and former article 4590i of the Texas Revised Civil Statutes contain
definitions of “health care liability claim” that refer to safety standards.  See
id; Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex.
Gen. Laws 2039, 2041, repealed and codified as amended by Act of June 2,
2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 864, 884. 
However, these definitions are materially different with respect to the part of
the definition dealing with safety standards.  Compare Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13)
(stating “‘Health care liability claim’ means a cause of action . . . for  . .
. other claimed departure from accepted standards of medical care, or health
care, or safety or professional or administrative services directly related
to health care”) (emphasis added) (hereinafter, “Current Definition”), with
Act of May 30, 1977, 1977 Tex. Gen. Laws at 2041 (stating “‘Health care
liability claim’ means a cause of action . . . for  . . . other claimed
departure from accepted standards of medical care or health care or safety”)
(emphasis added) (hereinafter, “Former Definition”).  Therefore, cases
regarding the construction of the Former Definition are not on point and do not
govern the construction of the part of the Current Definition dealing with
safety standards.  See Christus Health v. Beal, 240 S.W.3d 282, 288–89
(Tex. App.—Houston [1st Dist.] 2007, no pet.); Valley Baptist Med. Ctr. v.
Stradley, 210 S.W.3d 770, 774–75 (Tex. App.—Corpus Christi 2006, pet.
denied).  

                Research
reveals no cases from the Supreme Court of Texas or from this court addressing
the proper legal standard for determining whether a claim is a health care
liability claim under the Current Definition because the claimant alleges a “departure
from accepted standards of . . . safety or professional or administrative
services directly related to health care.”[8] 
Tex. Civ. Prac.
& Rem. Code Ann.
§ 74.001(a)(13).  Therefore, this is an issue of first
impression in this court.  

We
review the trial court’s interpretation of applicable statutes de novo. See
Johnson v. City of Fort Worth, 774 S.W.2d 653, 655–56 (Tex. 1989).  In
construing a statute, our objective is to determine and give effect to the legislature’s
intent.  See Nat’l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525,
527 (Tex. 2000).  If possible, we must ascertain that intent from the language
the legislature used in the statute and not look to extraneous matters for an
intent the statute does not state.  Id.  If the meaning of the statutory
language is unambiguous, we adopt the interpretation supported by the plain
meaning of the provision’s words.  St. Luke’s Episcopal Hosp. v. Agbor,
952 S.W.2d 503, 505 (Tex. 1997).  We must not engage in forced or strained
construction; instead, we must yield to the plain sense of the words the legislature
chose.  See id.

            The main issue in
construing the Current Definition regarding safety standards is whether the
phrase “         directly related to health care” modifies “standards of . . .
safety.” Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). 
One possible construction is that, under the rules of grammar, the
legislature’s failure to place a comma after “safety” means that “directly
related to health care” modifies “safety or professional or administrative
services.”  See Christus Health, 240 S.W.3d at 287–89.  Under this
construction,  accepted standards of safety do not fall within the Current
Definition unless they are directly related to health care.  See id.  Under
another possible construction, the phrase “directly related to health care”
modifies only “professional or administrative services,” and accepted standards
of safety need not be directly related to health care to fall within the
Current Definition.  See Emeritus Corp. v. Highsmith, 211 S.W.3d
321, 327–28 (Tex. App.—San Antonio 2006, pet. denied) (holding that claims were
health care liability claims because they involved alleged departure from
accepted standards of safety without any requirement that the safety standards
be related to health care).  Examining the words chosen by the legislature in
the context of the Current Definition and of Chapter 74 as a whole and in accordance
with rules of grammar, we conclude that, under the unambiguous statutory
language, the phrase “directly related to health care” modifies “safety or
professional or administrative services.”  This construction accords with six
of the seven other courts of appeals that have addressed this issue.[9] Compare
St. David’s Healthcare P’ship v. Esparza, 315 S.W.3d 601, 605 (Tex.
App.—Austin 2010, pet. filed); Dual D Healthcare Operations v. Kenyon,
291 S.W.3d 486, 489–90 (Tex. App.—Dallas 2009, no pet.); Yamada v. Friend,
No. 2-07-177-CV, 2008 WL 553690, at *3–4 (Tex. App.—Fort Worth Feb. 28, 2008,
pet. granted) (mem. op.); Omaha Healthcare Ctr. v. Johnson, 246 S.W.3d
278, 281–84 (Tex. App.—Texarkana 2008, pet. filed); Christus Health, 240
S.W.3d at 287–89; Stradley, 210 S.W.3d at 774–75, with
Emeritus Corp., 211 S.W.3d at 327–28.[10] 

Applying this construction, we now must determine
whether, in the Attack Claims, the Muguerzas allege a departure from accepted
standards of safety directly related to health care.  “Health care” is defined
as “any act or treatment performed or furnished, or that should have been
performed or furnished, by any health care provider for, to, or on behalf of a
patient during the patient’s medical care, treatment, or confinement.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10).  Presuming
that the alleged unprovoked physical assault by Dr. Appell asserted in the
Attack Claims is a departure from accepted standards of safety, this alleged
assault does not directly relate to any act or treatment performed or
furnished, or that should have been performed or furnished, by a health care
provider for, to, or on behalf of a patient during the patient’s medical care
or treatment.  Therefore, we conclude that the Attack Claims are not health
care liability claims based on the part of the Current Definition that includes
alleged departures from accepted standards of safety directly related to health
care.[11] 
See Wasserman,
2010 WL 1992622, at *3 (concluding that alleged sexual assault by surgeon of
one of his patients during a physical examination in the doctor’s office did
not relate to the patient’s treatment or care); Loaisiga, 2010 WL
3049086, at *4–5 (holding that alleged sexual assault
by doctor of two patients during medical examinations did not relate to the
doctor’s treatment of these patients); Holguin, 256 S.W.3d at 353–54 (concluding
that alleged sexual assault by nurse of hospital
patient was not related to patient’s course of care or treatment);  Jones,
148 S.W.3d at 205–6  (holding that alleged
sexual assault by emergency-room doctor of patient was not related to patient’s
medical care).

3.         Do Shari’s discovery responses mandate a
conclusion that the Attack Claims are health care liability claims?

The Executrix argues that
two of Shari’s discovery responses show that the true nature of the Muguerzas’
claims is medical negligence and that the Muguerzas are simply engaging in
artful pleading in an attempt to recast their claims as claims for physical
assault.  The interrogatory response was quoted in its entirety in section I.,
above.  When asked to describe, under oath, the conduct she claims
constituted an assault, Shari stated generally that Dr. Appell physically
attacked Shari and Cyrene, but Shari did not specify that Dr. Appell punched
her in the nose and mouth, violently threw her to the ground, or violently
shoved Cyrene.  Nonetheless, Shari stated in her interrogatory
answer that Dr. Appell physically attacked Shari and Cyrene in the examination
room, which is consistent with the Muguerzas’ allegations.  Though in her
interrogatory answer Shari did not recite the specific assault allegations from
the live pleading, she stated generally that Dr. Appell physically assaulted her
and her mother, and her answer is consistent with the allegations of the live
pleading.  

In a response to a request
for disclosure, when asked to identify the legal theories and general factual
bases of her claims, Shari responded that, because of Dr. Appell’s negligence, she
suffered injuries and continues to suffer from the incident made the basis of
this suit.  Shari also stated that she expected that her testimony and that of her
treating physicians will “clearly set forth the negligence of [Dr. Appell].” 
Other than this single response, Shari does not otherwise refer to negligence
in her discovery responses. In her disclosures, Shari designated various
treating physicians as expert witnesses and describes the expected subject
matter of their testimony.  In these descriptions, Shari does not state that
she expects these doctors to testify as to any standard of care allegedly owed
by Dr. Appell or as to Dr. Appell’s alleged negligence.  Instead, Shari states
that she expects these doctors to testify regarding her medical history, past
treatment for the injuries she sustained as a result of the incident made the
basis of this suit, and her treatment, prognosis, and medical bills.  Given
that the Muguerzas have never pleaded any negligence claims in this suit,
Shari’s response in her disclosures that Dr. Appell’s negligence caused her
injuries is puzzling.  Even more puzzling is the absence of any indication in
the record that Shari amended this response after the Executrix relied on it in
her motion to dismiss.  

Discovery responses cannot
amend a party’s pleadings.  See Price v. Short, 931 S.W.2d 677, 685–87
(Tex. App.—Dallas 1996, no writ) (noting that raising a defense in discovery
responses does not amend the pleadings or put opposing parties on notice that
the defense will be raised at trial).  Nonetheless, inaccurate or misleading
discovery responses do not further the legitimate goals and purposes of
discovery and can frustrate a litigant’s efforts to narrow issues for trial.  Though
the two discovery responses on which the Executrix relied may raise other
issues, these responses do not alter the claims the Muguerzas have pleaded in
their petition.  Research has revealed no case in which a court concludes that
a party’s discovery responses supplant the facts alleged in the party’s
pleading in determining whether the party has asserted a health care liability
claim.  

The Executrix also asserts
that Shari’s discovery responses are clear, deliberate, and unequivocal
statements of fact that are judicial admissions binding on Shari.  As discussed
above, the interrogatory response is consistent with
the allegations of the live petition.  Shari’s response in her
disclosures that Dr. Appell’s negligence caused her injuries is not consistent
with Shari’s pleaded claims.  But this response is a conclusion of law not a
statement of fact, and, given Shari’s pleadings and other discovery responses,
this response is not so clear and unequivocal as to rise to the level of a
judicial admission. See Regency Advantage Ltd. P’ship v. Bingo
Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996); In re S.A.M., 321
S.W.3d 785, 790, n.1 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  Shari’s
discovery responses do not mandate a conclusion that the Attack Claims are
health care liability claims.

For the foregoing reasons,
we conclude that the Attack Claims are not health care liability claims.

III.  Conclusion

Based on the Current
Definition, the Medical Procedure Claims are health care liability claims, and
the Attack Claims are not.  Accordingly, in denying the Executrix’s motion to
dismiss relative to the Medical Procedure Claims, the trial court erred, and we
sustain the Executrix’s appellate issue to this extent.  We overrule the
remainder of this issue.  Accordingly, we affirm the trial court’s denial of the
Executrix’s motion relative to the Attack Claims, reverse the trial court’s
order relative to the Medical Procedure Claims, and remand for further
proceedings regarding the Attack Claims.  We instruct the trial court to (1) dismiss
the Medical Procedure Claims under section 74.351(b) and (2) determine the
amount of reasonable attorney’s fees and costs to be awarded under section 74.351(b)
for the dismissal of the Medical Procedure Claims.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of
Justices Anderson, Frost, and Seymore.

 









[1] Unless
otherwise specified, all statutory references in this opinion are to the Texas
Civil Practice and Remedies Code. 





[2] Before his
death, Dr. Appell filed a motion to dismiss under section 74.351(b).  After the
Executrix was substituted in as the defendant, the Executrix filed her own
motion to dismiss under section 74.351(b). The trial court never ruled on Dr.
Appell’s motion; however, in the order from which the Executrix appeals, the
trial court denied the Executrix’s motion.  Though in the express language of
her appellate issue the Executrix complains of a denial of Dr. Appell’s motion,
it is clear from her notice of appeal and brief that the Executrix is
challenging the denial of her motion.  





[3]
“Medical care” means
“any act defined as practicing medicine under Section 151.002, Occupations
Code, performed or furnished, or which should have been performed, by one
licensed to practice medicine in this state for, to, or on behalf of a patient
during the patient’s care, treatment, or confinement.”  Tex. Civ. Prac. & Rem. Code
Ann. § 74.001
(a)(19) (West 2005).  Under section 151.002 of the Occupations Code,
“practicing medicine” is defined as “the diagnosis,
treatment, or offer to treat a mental or physical disease or disorder or a
physical deformity or injury by any system or method, or the attempt to effect
cures of those conditions, by a person who: (A)
publicly professes to be a physician or surgeon; or (B)
directly or indirectly charges money or other compensation for those services.”
Tex. Occ. Code Ann. § 151.002
(a)(13) (West Supp. 2010).  

 





[4] “Health care” is defined as “any act or treatment
performed or furnished, or that should have been performed or furnished, by any
health care provider for, to, or on behalf of a patient during the patient’s
medical care, treatment, or confinement.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10).  





[5]  It is undisputed
that Dr. Appell was a physician and that the Muguerzas allege the claimed
assault by Dr. Appell proximately resulted in injury to them. 





[6]
The Executrix asserts that Dr. Appell’s decision
to allow Cyrene to be present in the examination room involved a medical
decision by Dr. Appell that implicates his professional judgment.  Presuming
that this is correct, any such medical decision or professional judgment is not
relevant to the Muguerzas’ claims for assault and the Executrix’s defenses to
these claims.  If this case were tried, there might be testimony as to whether
Dr. Appell physically assaulted the Muguerzas, whether any such physical
assault was provoked or consented to by the Muguerzas, and whether Dr. Appell
acted in self-defense.  But any professional judgment by Dr. Appell in deciding
to allow Cyrene to be present in the examination room is not related to any
potential liability for the alleged assault of the Muguerzas in the examination
room.

 





[7] In
addition, the plaintiff in Mata pleaded medical negligence until the day
before the hearing on the doctor’s motion to dismiss, when the plaintiff
dropped the negligence claim and added claims for assault and battery, sexual
assault, and violation of his civil rights.  See Mata, 2007 WL
3003139, at*1.





[8] Regarding the safety portion of the Former Definition,
some justices on the Supreme Court of Texas have concluded that the alleged
departure from accepted safety standards must be “an inseparable or integral
part of the patient’s care or treatment,” for the claim to fall under this part
of the Former Definition.  See Marks
v. St. Luke’s Episcopal Hosp., 319 S.W.3d
658, 662–64 (Tex. 2010) (plurality op.) (Medina, J., joined by Hecht, J.).  On
this issue, other justices have concluded that the alleged departure from accepted safety standards need not be
related to health care for the claim to fall under this part of the Former
Definition.  See id. at 672–74 (Johnson,
J., concurring, joined by Willett, J.).

 





[9] The Supreme Court of Texas may resolve this issue when
it issues its opinion in Yamada v. Friend, which has been submitted in
cause number 08-0262 in that court.





[10]This
disagreement among courts of appeals has been mirrored by a disagreement among
justices on the Supreme Court of Texas opining as to the construction of the
Current Definition in separate opinions in a case involving the Former
Definition.  Compare Diversicare Gen. Partners, 185 S.W.3d at 867 (O’Neill,
J., dissenting, joined by Brister, J. and Green, J.) (stating that “[w]hen
it recently amended the definition of ‘health care liability claim,’ the
Legislature clarified that claims falling under the statute must relate to the actual
provision of health care”), with id. at 861 n. 4 (Jefferson,
C.J., concurring in part, dissenting in part, and concurring in judgment) (stating
that “[i]t is clear under the revised statute that claims for ‘professional or
administrative services’ must be ‘directly related to health care’;  however,
there is no indication that claims involving ‘safety’ must also relate to
health care”).  





[11] The Executrix has not argued that the Muguerzas have
alleged a departure from accepted standards of professional or administrative
services directly related to health care; however, if she had made this argument,
the alleged departure likewise would not be directly related to health care.