**Opinion issued August 28, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00335-CV

————————————

**EMERLEAN WILLIAMS, Appellant**

**V.**

**RIVERSIDE GENERAL HOSPITAL, INC., Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-32441**

---

## MEMORANDUM OPINION

Emerlean Williams appeals the trial court's grant of Riverside General Hospital, Inc.'s motion to dismiss her suit pursuant to Chapter 74 of the Texas Medical Liability Act (TMLA). After concluding that Williams had failed to file

an expert report as required by section 74.351(a) of the TMLA,[1] the trial court granted the motion, dismissed the suit, and awarded Riverside its attorneys' fees. In three issues, Williams argues that the trial court erred by dismissing her suit because her claims, which were neither directly nor indirectly related to health care, were not health care liability claims (HCLCs), and that, even if her claims could be classified as HCLCs pursuant to the Supreme Court's opinion in *Texas West Oaks Hospital, L.P. v. Williams*, 371 S.W.3d 171 (Tex. 2012), that opinion should only be applied prospectively. We reverse and remand for further proceedings.

## Background

On June 4, 2012,[2] Williams filed suit against Riverside, a community-based, non-profit, acute-care facility that provides inpatient and outpatient hospital care, where she was employed as a nursing assistant. Williams alleged that she suffered personal injuries from two separate incidents at Riverside while at work. Specifically, that she "sustained serious and permanent injuries when she tripped

---

[1] In 2013, the legislature amended section 74.351 of the TMLA. *See* Act of May 26, 2013, 83rd Leg. R.S., ch. 870, § 2. The new provision applies to all suits filed after September 1, 2013. Because Williams filed her original petition prior to September 1, 2013, the effective date the amendments, we will apply the former version of section 74.351 to her claims. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2014)).

[2] Williams originally filed suit on October 7, 2010 (trial court cause number 2010-66405). That case was non-suited and re-filed as the instant case pursuant to an agreement between the parties.

over an extension cord left out by another hospital employee" on March 13, 2009, and that she "slipped and fell on a substance on the floor after performing a 'room check'" on September 10, 2010. Williams later stated that the substance on the floor came from "a leaky piece of lab equipment."[3] In her petition, Williams alleged that her injuries resulted from her employer's breach of certain safety standards by failing to provide her with: (1) the proper equipment or training for the job; (2) adequate assistance or supervision in performing the tasks she was assigned to perform; and (3) a safe place to work.

On March 8, 2013, Riverside filed a motion to dismiss Williams' suit pursuant to Chapter 74 of the TMLA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Relying upon the Supreme Court's June 2012 opinion in *Texas West Oaks* and its discussion of "safety" HCLCs, Riverside argued that Williams' claims were HCLCs and that, as such, she was required to file an expert report. Her failure to do so, Riverside argued, mandated dismissal of her suit and an award of attorney's fees. Relying upon both *Texas West Oaks* and *Ross v. St. Luke's Episcopal Hospital*, No. 14–12–00885–CV, 2013 WL 1136613, at *1–2 (Tex. App.—

---

[3] Williams informed this Court at oral argument of her prior mistaken understanding that the source of the substance was from leaking laboratory equipment. She had since learned through discovery that the leak was actually from air conditioning equipment in the hospital's ceiling. She acknowledged, however, that this new information was not included in the appellate record. *See Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 501 (Tex. App.—Austin 1991, writ denied) ("It is elementary that . . . an appellate court may not consider matters outside the appellate record.").

Houston [14th Dist.] Mar. 19, 2013, pet. granted) (mem. op.), a recent appellate decision broadly applying *Texas West Oaks*, the trial court determined that Williams' suit to be a HCLC, dismissed the case, and awarded attorney's fees to Riverside.

## Discussion

Williams argues that (1) this court should construe the Supreme Court's discussion of "safety" in *Texas West Oaks* as judicial dicta, and apply the plain meaning of the words in the TMLA so that the term "safety" is modified by "directly related to health care," and hold that her safety claim is not a HCLC because it is not "directly related to health care," (2) alternatively, if we decide to follow the Supreme Court's interpretation of "safety" as set forth in *Texas West Oaks*, then we should follow some of our sister courts and hold that, although the alleged breach in safety need not be directly related to the provision of health care, there must still be some indirect, reasonable relationship between the two, and because her claim is not indirectly related to health care, it is not a HCLC, and (3) in the further alternative, if we subscribe to the *Texas West Oaks*' interpretation, that new rule would only apply prospectively, and, thus, because she filed suit prior to the issuance of the *Texas West Oaks* opinion, her safety claims against Riverside should not be treated as HCLCs.

4

## A.    Standard of Review

Generally, we review a trial court's decision on a motion to dismiss a HCLC for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). However, because this appeal poses a question of statutory construction (i.e., whether Williams' claims are HCLCs), we apply a de novo standard of review. *Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012); *Tex. W. Oaks*, 371 S.W.3d at 177. When determining whether a claim is a HCLC, we consider the entire record, including the pleadings, motions and responses, and relevant evidence properly admitted. *Loaisiga*, 379 S.W.3d at 258.

> The TMLA defines HCLCs as:
>
> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or *safety* or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West Supp. 2014) (emphasis added). A claimant asserting a HCLC must serve an expert report on the defendant within a specified deadline and until that time, discovery is limited. *Id.* § 74.351(a),(c), & (s). If the claimant fails to serve an expert report, the trial court

must, on the defendant's motion, dismiss the claims with prejudice and award the defendant reasonable attorney's fees and costs. *Id.* § 74.351(b).

It is fairly well established that, except for "medical care" and "health care" claims, HCLCs can be filed by both patients and non-patients (e.g., visitors and employees of health care providers). *See Tex. W. Oaks*, 371 S.W.3d at 178–79; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(2) (West Supp. 2014) (defining "claimant" as "a person . . . seeking or who has sought recovery of damages in a health care liability claim."). In such cases, it is not the status of the person bringing the claim, but rather the nature of the underlying claim, that determines whether the claim is a HCLC. *See Tex. W. Oaks*, 317 S.W.3d at 178 ("With the exception of medical care and health care claims, our focus in determining whether claims come under the TMLA is not the status of the claimant, but the gravamen of the claim or claims against the health care provider."). The Supreme Court instructs that when "seeking to distinguish ordinary negligence claims from HCLCs," we must consider the "nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of the TMLA." *Id.* at 176.

B. **Applicable Law**

In *Texas West Oaks*, a mental health professional sued his employer, a private psychiatric hospital, for injuries sustained during a physical altercation with

6

the psychiatric patient he was supervising. Relying in part on its decision in *Diversicare General Partnership, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005), the *Texas West Oaks* court initially held that the employee's claims were HCLCs because he alleged departures from accepted standards of "health care," (i.e., that his employer departed from accepted standards of care with regard to training and staffing policies, supervision, and patient protection, which are all integral components of a health care facility's rendition of health care services). *See Tex. W. Oaks*, 371 S.W.3d at 180; TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (defining HCLC as "a cause of action against a health care provider or physician for . . . [a] claimed departure from accepted standards of . . . health care"); *see also Diversicare*, 185 S.W.3d at 848, 850 (holding that training and staffing policies, supervision, and patient protection are integral components of health care facility's rendition of health care services). The *Texas West Oaks* court further observed that expert testimony is a factor in assessing the nature of a claim against a health care provider and that, because such testimony was necessary to prove or refute the merits of the employee's claims in that case, such claims fall under the ambit of the TMLA. *Tex. W. Oaks*, 371 S.W.3d at 182 ("[W]e now hold that if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim."). Specifically, the Court noted that the employee's claims would require

7

expert testimony on issues that are "integral to a patient's care and confinement," including the proper training, supervision, and protocols necessary "to prevent, control, and defuse aggressive behavior and altercations in a mental hospital between psychiatric patients and employed professional counselors who treat and supervise them." *Id.* at 182.

Even though it was not necessary to the resolution of the case because the Court had already determined that the employee's claims alleged departures from accepted *health care* standards, the Supreme Court addressed whether the employee's claims were also HCLCs because he alleged departures from accepted *safety* standards. *See Tex. W. Oaks*, 371 S.W.3d at 183–86. Abrogating precedent from seven courts of appeals, including this court's decision in *Christus Health v. Beal*,[4] the Supreme Court determined that the phrase "directly related to health care" in section 74.001(a)(13) does not modify the phrase "claimed departure[s] from accepted standards of . . . safety." *See Tex. W. Oaks*, at 183–86. Thus, the

---

[4] *See St. David's Healthcare P'ship, L.P. v. Esparza*, 315 S.W.3d 601, 604 (Tex. App.—Austin 2010), *rev'd on other grounds*, 348 S.W.3d 904 (Tex. 2011) ("directly related to health care" modifies "safety"); *Appell v. Muguerza*, 329 S.W.3d 104, 115 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (same); *Dual D Healthcare Operations, Inc. v. Kenyon*, 291 S.W.3d 486, 489–90 (Tex. App.—Dallas 2009, no pet.) (same); *Omaha Healthcare Ctr., L.L.C. v. Johnson*, 246 S.W.3d 278, 284 (Tex. App.—Texarkana 2008), *rev'd on other grounds*, 344 S.W.3d 392 (Tex. 2011) (same); *Harris Methodist Ft. Worth v. Ollie*, 270 S.W.3d 720, 723 (Tex. App.—Fort Worth 2008), *rev'd on other grounds*, 342 S.W.3d 525 (Tex. 2011) (same); *Christus Health v. Beal*, 240 S.W.3d 282, 289 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (same); *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 775 (Tex. App.—Corpus Christi 2006, pet. denied) (same).

8

high court held, a claim based upon alleged departures from accepted safety standards need not be directly related to health care to be a HCLC. *See id.*

Two months later, the Supreme Court considered whether a female patient's claim that her doctor assaulted her by groping her breasts while examining her for sinus and flu symptoms was a HCLC. *See Loaisiga*, 379 S.W.3d at 252. After quoting the statute's broad definition of "health care," the *Loaisiga* court held that "[t]he breadth of the statute's text essentially creates a presumption that a claim is an HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Id.* at 256; TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (West Supp. 2014) (defining "health care" to include "any act . . . by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement"). That presumption, however, is rebuttable because, as the court noted, sometimes the "only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (*i.e.*, the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both." *Loaisiga*, 379 S.W.3d at 256.

The *Loaisiga* court then held that "a claim against a medical or health care provider for assault is not an HCLC if the record conclusively shows that (1) there

9

is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place." *Id.* at 257. The court further concluded that the record in that case did not contain sufficient information to conclusively show that the defendant's conduct "could not have been part of the examination he was performing" and so it remanded the case to the trial court for further proceedings. The *Loaisiga* court did not cite or refer to the *Texas West Oaks* decision in its opinion.

In March 2013 the Texarkana court became the first appellate court to address the question of the nexus between safety-related complaints and health care in light of the Supreme Court's decision in *Texas West Oaks*. In *Good Shepherd Medical Center–Linden, Inc. v. Twilley*, the hospital's director of plant operations sued the hospital for negligence after the he fell from a ladder attached to the hospital building and later tripped and fell over a mound of hardened cement on the hospital's premises. 422 S.W.3d 782, 783 (Tex. App.—Texarkana 2013, pet. denied). The trial court denied the hospital's motion to dismiss the employee's claims for failure to supply an expert report under the TMLA. *Id.* at 784. On appeal, the Texarkana court affirmed the trial court's ruling and held that, while a

10

safety claim need not be *directly* related to health care pursuant to *Texas West Oaks*, there must be some *indirect* link between an employee's safety claim and the provision of health care in order for the claim to fall under the TMLA. *See Twilley*, 422 S.W.3d at 785.

The *Twilley* court enumerated several reasons supporting this position. *Id.* at 785–89. In particular, that the safety claims in *Texas West Oaks* "were indirectly related to healthcare" because those claims implicated safety standards for health care providers working with potentially violent schizophrenic patients in a psychiatric hospital, whereas "[t]he gravamen of Twilley's claims—for OSHA violations—[was] unrelated to the provision of health care to the patient population or to anyone else." *Id.* at 787. Thus, unlike in *Twilley*, the claims in *Texas West Oaks* "were more closely connected to health care than simply arising in a health care context." *Id.* at 786.

The *Twilley* court further noted the Supreme Court's acknowledgement in *Loaisiga* that a claim against a medical or health care provider for assault could fall outside of the TMLA when it was unrelated to health care, and reasoned that common sense dictated that the same could also be true of safety claims that are unrelated to the provision of health care. *Twilley*, 422 S.W.3 at 788–89. Thus, the *Twilley* court interpreted *Loaisiga* to suggest a limited application of *Texas West Oaks's* discussion of departures from accepted safety standards.

11

Finally, the *Twilley* court observed that requiring an expert report in that case would be an exercise in futility—where is to be found a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care—OSHA ladder construction and installation and walking surface standards? *Id.* at 789. The court aptly noted that a medical report in that case would not be able to shed any light on whether the ladder violated OSHA standards or the concrete mound constituted an unreasonable risk of harm. *Id.* at 789.

Later that same month, the Fourteenth Court of Appeals addressed this issue in *Ross* and reached a decidedly different opinion. In that case, the *Ross* court applied the judicial dicta in *Texas West Oaks* regarding claims based upon alleged departures from accepted safety standards, holding that a slip-and-fall claim by a hospital visitor against the hospital was a HCLC. *See Ross v. St. Luke's Episcopal Hosp.*, No. 14–12–00885–CV, 2013 WL 1136613, at *1–2 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. granted) (mem. op.). The court held that, under *Texas West Oaks*, a claim based upon an alleged departure from accepted standards of safety, broadly defined, may constitute a HCLC, even if no patient-physician relationship is involved and the allegedly negligent conduct does not relate to

health care. *See id.* The Fourteenth Court of Appeals reiterated its position in several subsequent decisions.[5]

Our sister court in Corpus Christi, too, considered the issue in *Doctors Hosp. at Renaissance, Ltd. v. Mejia.* No. 13–12–00602–CV, 2013 WL 4859592, at *1 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (mem. op.). The court held that a hospital visitor's claim for injuries from a slip and fall on a freshly waxed walkway that a hospital employee directed her to use was not a HCLC. *Id.* at *3. The *Mejia* court wrote that the *Texas West Oaks* opinion "stopped short of concluding that all premises liability claims involving a healthcare defendant are healthcare liability claims" and "[i]nstead, the court recognized a new type of healthcare liability claim—that is, one involving safety which is *indirectly* related to health care. Therefore, we apply *[Texas] West Oaks* narrowly to govern cases that involve safety claims that are indirectly related to health care." *Mejia*, 2013

---

[5]  *See CHCA W. Hous., L.P. v. Shelley*, --- S.W.3d ---, 2014 WL 3429478, at *1–2 (Tex. App.—Houston [14th Dist.] Jul. 15, 2014, pet. filed) (holding secretary's negligence action against employer/hospital for injuries she received when she slipped and fell at work was HCLC); *CHCA Bayshore, L.P. v. Salazar*, No. 14–12–00928–CV, 2013 WL 1907888, at *5 (Tex. App.—Houston [14th Dist.] May 7, 2013, pet. denied) (mem. op.) (holding hospital employee's negligence action against employer/hospital for injuries received when attempting to maneuver patient was HCLC); *Tillman v. Mem'l Hermann Hosp. Sys.*, No. 14–12–01169–CV, --- S.W.3d ---, 2013 WL 5470064, at *3 (Tex. App.—Houston [14th Dist.] Oct. 1, 2013, pet. denied) (holding negligence action by hospital employee who injured her back while x-raying patient was HCLC); *Mem'l Hermann Hosp. Sys. v. Galvan*, 434 S.W.3d 176, 186 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, pet. filed) (holding hospital visitor slipping on water on floor of hospital hallway was HCLC).

WL 4859592, at \*2. Relying upon its analysis of *Texas West Oaks*, the *Mejia* court held that the hospital visitor's garden-variety slip-and-fall claim was not a HCLC because there was no indirect relationship between the hospital's conduct and health care.

Later that same month the Supreme Court revisited the issue of safety claims and health care in a case with similar facts to *Texas West Oaks*. *Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 724–25 (Tex. 2013). In *Psychiatric Solutions*, a psychiatric nurse was injured while physically restraining a psychiatric patient during a behavioral emergency. *Id.* at 725. The nurse alleged that his injuries were the "result of improper security of a dangerous psychiatric patient" and that his employer, a health care provider, "failed to provide a safe working environment and failed to make sufficient precautions for [his] safety." *Id.* at 726. The Supreme Court noted that "[a]s in *[Texas] West Oaks*, [the plaintiff's] allegations [fell] under both the safety and health care components of an HCLC." *Id.* Relying upon *Texas West Oaks*, the Supreme Court held that, because expert health care testimony was required to either support or refute the nurse's allegations that his health-care-provider-employer departed from the accepted standards of safety and health care, his claims were HCLCs. *Psychiatric Solutions*, 414 S.W.3d at 727.

14

The Beaumont, Dallas, Fort Worth, and San Antonio courts of appeals have also addressed this issue, and relied on *Mejia* or *Twilley* and held that safety claims by non-patients were not HCLCs. *See Christus St. Elizabeth Hosp. v. Guillory*, 415 S.W.3d 900, 902–03 (Tex. App.—Beaumont 2013, pet. filed) (holding that negligence claim by hospital visitor for injuries allegedly sustained when she slipped and fell on water in hospital hallway near nurses' station was not HCLC because there was no nexus between plaintiff's injury and "the hospital's duties of providing healthcare" and noting that hospital had "failed to direct the trial court or [appellate court] to any health care standards governing a hospital's maintenance or lighting of its halls or buildings"); *Baylor Univ. Med. Ctr. v. Lawton*, --- S.W.3d ---, No. 05–13–00188–CV, 2013 WL 6163859, at *1–4 (Tex. App.—Dallas Nov. 25, 2013, pet. filed) (following *Twilley* and holding that nurse's claim against hospital-employer for workplace injuries sustained when raw sewage backed-up into hospital's showers and sinks was not HCLC because gravamen of her claim was unrelated to provision of health care; as in *Twilley*, "it would be difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care for plumbing"); *Weatherford Tex. Hosp. Co. v. Smart*, 423 S.W.3d 462, 463, 467–68 (Tex. App.—Fort Worth 2014, pet. filed) (following *Twilley*, holding visitor falling on puddle of water in hospital was not indirectly related to health care or safety and did not require an expert

15

report and therefore was not HCLC); *Methodist Healthcare Sys. of San Antonio, Ltd., LLP v. Dewey*, 423 S.W.3d 516, 516, 519–20 (Tex. App.—San Antonio 2014, pet. filed) (holding that claim of hospital visitor on crutches who fell when automatic entrance door to hospital closed on him was not HCLC; stating court agreed "with the *Mejia* court that the supreme court recognized a new type of healthcare liability claim, one involving safety that is indirectly related to health care"). The Tyler Court of Appeals, however, followed *Ross* and held that that a negligence claim by a hospital visitor for injuries she allegedly sustained when she fell on a mat saturated with water in the hospital's lobby was a HCLC. *E. Tex. Med. Ctr. Reg'l Health Care Sys. v. Reddic*, 426 S.W.3d 343, 345, 348 (Tex. App.—Tyler 2014, pet. filed) ("We agree with *Ross* that a fall, even by a visitor, in a hospital lobby meets the TMLA's safety prong so that [the plaintiff's] claims in this case are properly classified as HCLCs.") Clearly, this issue is squarely before the Supreme Court.[6]

## C. Rejection of *Texas West Oaks'* Interpretation of "Safety"

In her first and second issues, Williams argues that this Court should construe the Supreme Court's discussion of "safety" in *Texas West Oaks* as judicial dicta, and apply the plain meaning of the words in the TMLA so that the term

---

[6] *Ross v. St. Luke's Episcopal Hosp.*, No. 14–12–00885–CV, 2013 WL 1136613 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. granted) (mem. op.) is scheduled to argue before the Texas Supreme Court on November 5, 2014.

"safety" is modified by "directly related to health care" and, in the alternative, if we decide to follow the Supreme Court's interpretation of "safety" in *Texas West Oaks*, then we should follow some of our sister courts and hold that, although the alleged breach in safety need not be directly related to health care, there must still be some indirect, reasonable relationship between the two. According to Williams, her claim is neither directly nor indirectly related to health care, and therefore, it is not a HCLC in either case.

Judicial dictum is a statement by the supreme court made very deliberately after mature consideration and for future guidance in the conduct of litigation and is "at least persuasive and should be followed unless found to be erroneous." *Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (quoting *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex. 1964)). Williams contends that the Supreme Court's conclusion that the phrase "directly related to health care" does not modify "safety" is erroneous for the reasons set forth in Justice Jennings' dissenting opinion in *CHCA Bayshore, L.P. v. Ramos*, 388 S.W.3d 741, 751 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (J. Jennings, dissenting). The Fourteenth Court of Appeals has previously held that this portion of the Supreme Court's opinion in *Texas West Oaks* is judicial dicta. *See Mem'l Hermann Hosp. Sys. v. Galvan*, 434 S.W.3d 176, 181–82 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) (concluding that Supreme Court's statements

17

in *Texas West Oaks* regarding claims based upon alleged departures from accepted safety standards are judicial dicta).  We agree with *Galvan* that this portion of the opinion is judicial dicta.  *Id.*  However, we decline the offer to essentially disregard the Supreme Court's direction regarding the interpretation of "safety," particularly in light of the fact that the Supreme Court reaffirmed its position in *Psychiatric Solutions* the following year.  *See Psychiatric Solutions*, 414 S.W.3d at 726 (holding psychiatric nurse's claim that he was injured "as a result of improper security of a dangerous psychiatric patient" because his employer, a health care provider, "failed to provide a safe working environment and failed to make sufficient precautions for [his] safety" were claims that employer departed from the accepted standards of safety and health care, as in *Texas West Oaks*, and that such claims required expert health care testimony to support or refute allegations, and therefore, claims were HCLCs).  We further note that another panel of this Court recognized—albeit in dicta—that *Texas West Oaks* held that safety HCLCs need not be "directly related to the provision of healthcare."  *See Obstetrical and Gynecological Associates, P.A. v. Hardin*, No. 01–13–00236–CV, 2013 WL 6047595, at *3 n.4 (Tex. App.—Houston [1st Dist.] Nov. 14, 2013, no pet.) (mem. op.).

Having determined that we will follow the Supreme Court's interpretation of "safety," we must now decide whether we agree with the Fourteenth and Tyler

Courts of Appeals and apply *Texas West Oaks* decision broadly to encompass all safety claims that are completely unrelated health care, or whether we agree with the Texarkana, Corpus Christi, Beaumont, Dallas, Fort Worth, and San Antonio Courts of Appeals and apply a narrow interpretation of the decision's judicial dictum regarding "safety" HCLCs.

Like the majority of our sister courts, we do not interpret *Texas West Oaks* to mean that all safety claims that occur in a health care setting—even claims that are otherwise completely untethered from health care—are HCLCs. Although safety claims do not need to be *directly* related to health care pursuant to *Texas West Oaks*, there must, nevertheless, be some *indirect*, reasonable relationship between claims and the provision of health care for such claims to be HCLCs. *See Mejia*, 2013 WL 4859592, at *2 (interpreting *Texas West Oaks* "narrowly to govern cases that involve safety claims that are indirectly related to health care"); *Twilley*, 422 S.W.3d at 788 (interpreting *Texas West Oaks* narrowly and holding that safety claim must have at least indirect relationship to health care to be considered HCLC); *see also Dewey*, 423 S.W.3d at 519 (holding that safety claim must have at least indirect relationship to health care to be considered HCLC); *Smart*, 423 S.W.3d at 467–68 (same); *Lawton*, --- S.W.3d at ---, 2013 WL 6163859, at *3 (same); *Guillory*, 415 S.W.3d at 902–03 (same). As the *Twilley* court correctly noted: "[I]f *every* safety claim against a health care provider were considered a

health care liability claim, there would be no need to analyze the nature of the acts or omissions which caused the alleged injuries." *Twilley*, 422 S.W.3d at 788 (emphasis in original); *see also Tex. W. Oaks*, 371 S.W.3d at 176 (directing lower courts to distinguish ordinary negligence claims from HCLCs by focusing on "nature of the acts or omissions" causing alleged injuries).

As in *Twilley*, *Guillory*, *Smart*, and *Mejia*, the gravamen of Williams' claim that she tripped over an extension cord is a garden-variety slip-and-fall claim that is completely untethered from the provision of health care. *See Twilley*, 422 S.W.3d at 787 (holding employee's claim that he tripped on concrete mound unrelated to health care); *Guillory*, 415 S.W.3d at 901, 903 (holding visitor's claim that she slipped and fell on water in hospital hallway unrelated to health care); *Smart*, 423 S.W.3d at 467–68 (holding employee's claim that he slipped in water puddle unrelated to health care); *Mejia*, 2013 WL 4859592, at \*1, \*4 (holding visitor's claim she slipped on waxed floor unrelated to health care). The same holds true for Williams' claim for her slip and fall due to leakage on the hospital's floor. That the substance originated from an air-conditioning system or "a leaking piece of lab equipment" does not alter the outcome. Although Riverside argues that leaking "lab equipment" is the type of event that only occurs in a medical or health care setting, we disagree. "Lab equipment" is a broad term that can apply to a wide range of equipment used in a variety of educational and commercial

20

settings, both inside and outside of the health care field (e.g., classrooms, research facilities). Despite Riverside's arguments to the contrary, Williams' vague reference to a leaking piece of unspecified "lab equipment" does not bolster the link between her claim and the provision of health care.

We further note that, as in *Twilley,* requiring an expert medical or health care report in this case would amount to an exercise in futility. *See Lawton*, --- S.W.3d at ---, 2013 WL 6163859, at *1–4 (following *Twilley* and holding that nurse's claim against hospital-employer for workplace injuries sustained arising from sewage back-up at hospital was not HCLC because gravamen of her claim was unrelated to provision of health care).

It is improbable that Williams could locate a premises liability expert who also practiced "health care in a field of practice that involves the same type of care or treatment as that delivered by" Riverside to opine on either claim. *See Psychiatric Solutions*, 414 S.W.3d at 726 (quoting *Texas West Oaks*' holding "that if expert medical or health care testimony is necessary to prove or refute the merits of a claim against a physician or health care provider, the claim is a health care liability claim.") Further, were such an expert available, the proof or refutation of the merits of ordinary, garden-variety slip-and-fall negligence claims do not require expert medical or health care testimony. Because neither of Williams'

claims before us are a HCLC, the trial court erred in granting Riverside's motion to dismiss.

Riverside argued during oral argument that the trial court's granting of the motion to dismiss could also be affirmed because Williams failed to rebut the presumption that her claims were HCLCs pursuant to *Loaisiga*. *Loaisiga*, however, was not a claim that a health care provider departed from an accepted *safety* standard, as in the present case. On the contrary, *Loaisiga* only applies to alleged departures from accepted standards of "health care." After quoting the broad definition of "health care,"[7] the *Loaisiga* court held that "[t]he breadth of the statute's text essentially creates a presumption that a claim is an HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loaisga* does not expressly apply to a safety claim brought by an employee against its health-care-provider employer and we decline to extend it to such cases. *See, e.g., Galvan*, 434 S.W.3d at 185 ("The *Loaisiga* court mentioned safety in passing, but it did not specifically address the scope of the statutory definition regarding claims based upon alleged departures from accepted safety standards. . . .").

---

[7]     TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (West Supp. 2014) (defining "health care" to include " any act . . . by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.")

Having determined that the trial court erred in granting Riverside's motion to dismiss because Williams' claims were not HCLCs, we need not address Williams' retroactivity issue.

**Conclusion**

We reverse the trial court's judgment dismissing Williams' suit and awarding attorneys' fees to Riverside pursuant to section 74.351(a) and remand for further proceedings.

Jim Sharp
Justice

Panel consists of Justices Jennings, Higley, and Sharp.