**Opinion issued July 9, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-22-00966-CV**

———————————

**CHATARA SPEARS, Appellant**

**V.**

**CATHY LIU D/B/A AAA HEALTH CENTER, Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-18741**

---

## MEMORANDUM OPINION

Appellant Chatara Spears challenges the trial court's judgment dismissing her claims against Cathy Liu, doing business as AAA Health Center. Spears contends that the trial court erred in construing her negligence claim as a health care liability claim. She also argues that even if her claim is a health care liability

claim, the trial court erred in granting Liu's motion to dismiss. We agree with the trial court that Spears's claim is a health care liability claim. We reverse the judgment dismissing Spears's claim for failure to provide a sufficient expert report to support her health care liability claim and remand to the trial court to grant a 30-day extension for Spears to attempt to cure the deficiencies in the report.

## Background

Chatara Spears received acupuncture with suction cup treatment on her neck, shoulder, and upper and lower back from Liu in July 2020. After the treatment she had four small areas of second-degree burns including skin water blisters.

Spears sued the appellee, claiming that because of Liu's negligence, she suffered scarring injuries. In accordance with the Texas Medical Liability Act (TMLA),[1] Spears timely served an expert report from Dr. Brendan Armm, a doctor of acupuncture and oriental medicine. Liu challenged the adequacy of the report as to the standard of care and causation. The trial court agreed with Liu, struck the expert report from the record, dismissed Spears's claim with prejudice, and awarded attorney's fees and court costs. Spears appealed.

On appeal, Spears argues that her claim is not a health care liability claim and that if it is, the expert report was not deficient as to standard of care and causation. Finally, she argues that if the expert report was deficient, the trial court

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE § 74.001–.507.

2

erred by dismissing her claim without granting her an extension of time to cure the deficiencies.

**Health Care Liability Claim**

We first address whether Spears's claim against Liu is a health care liability claim under the TMLA. Spears argues that the court erred because her claim is not properly classified as a health care liability claim and therefore is not subject to the expert report requirements found in the Civil Practice and Remedies Code Chapter 74.

**A.      Standard of Review and Applicable Law**

Generally, we review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. Of Tex, Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). Whether a claim is a health care liability claim under the TMLA is a question of law that we review de novo. *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019). In doing so, we consider the underlying nature of the plaintiff's claim rather than its label. *Id.* We consider the entire record, including the pleadings, motions and responses, and relevant evidence properly admitted. *Loasiga v Cerda*, 379 S.W.3d 248, 258 (Tex. 2012).

Chapter 74 defines a "health care liability claim" as:

A cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted

standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13); *see also Ross v. St Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015). We determine whether appellant's claim is a health care liability claim by determining whether the cause of action (1) is against a health care provider and (2) whether the claim at issue concerns treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety. *City of Houston v. Houston*, 608 S.W.3d 519, 525 (Tex. App.—Houston [1st Dist.] 2020, no pet.)

## B. Health Care Provider

Spears first argues that the acupuncturist is not a health care provider under the TMLA.

The TMLA defines a "[h]ealth care provider" as:

any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: (i) a registered nurse; (ii) a dentist; (iii) a podiatrist; (iv) a pharmacist; (v) a chiropractor; (vi) an optometrist; (vii) a health care institution; or (viii) a health care collaborative certified under Chapter 848, Insurance Code.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(12)(A). Spears argues that because acupuncturists are not specifically listed by the statute, they are not subject to the requirements of Chapter 74. "The list of people and entities in the TMLA's

4

definition of a 'health care provider' is not exclusive, and a person or entity not specifically enumerated may still constitute a health care provider under the TMLA." *City of Houston*, 608 S.W.3d at 525 (concluding City, through fire department and its EMTs, constitutes health care provider under TMLA); *see also Skloss v. Perez*, No. 01-08-00484-CV, 2009 WL 40438, at *3–6 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.) (mem. op.) ("The list of health care providers in section 74.001(a)(12) does not specifically include a [ ] [licensed professional counselor]; however, the list is non-exhaustive."); *Christus Health v. Beal*, 240 S.W.3d 282, 286–87 (Tex. App.—Houston [1st Dist.] 2007, no pet.), *abrogated on other grounds by Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171 (Tex. 2012) (holding drug and alcohol treatment centers are health care providers). Because the list in the definition of "health care provider" is not exclusive and the definition does not exclude acupuncturists like Liu, the Legislature has not expressed an intent that such a practitioner cannot fall within the protections of Chapter 74. *See Christus Health*, 240 S.W.3d at 286; *see also* TEX. GOV'T CODE § 311.005(13) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.").

To determine whether Liu qualifies as a health care provider, then, we must determine whether Liu is a "person . . . duly licensed, certified, registered, or

5

chartered by the State of Texas to provide health care." *See* TEX. CIV. PRAC. & REM. CODE § 74.001(12). Chapter 74 defines "health care" as "any act or treatment performed or furnished, or that should have been performed and furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement." *Id.* § 74.001(10).

The statutes pertaining to acupuncture are found in Chapter 205 of the Texas Occupations Code. The subtitle in which Chapter 205 appears is titled "Other Professions Performing *Medical Procedures*." TEX. OCC. CODE Subtitle C, §§ 201.001–206.351 (emphasis added). Chapter 205 defines "acupuncture" as:

> The nonsurgical, nonincisive insertion of an acupuncture needle and the application of moxibustion to specific areas of the human body as primary mode of *therapy to treat and mitigate a human condition*, including evaluation and assessment of the condition, and (B) the administration of thermal or electrical treatments or the recommendation of dietary guidelines, energy flow exercise, or dietary or herbal supplements in conjunction with the treatment described by Paragraph (A).

TEX. OCC. CODE § 205.001(2)(A–B) (emphasis added). Licenses to practice acupuncture are issued through the Texas State Board of Acupuncture Examiners and/or the Texas Medical Board. *See id.* § 205.202.[2] Given the Legislature's decision to include legislation pertaining to acupuncturists under a subtitle relating

---

[2] Liu's license is not part of the record, but in her appellate brief she states that she is duly licensed to practice acupuncture by the State of Texas, and that her license to practice acupuncture is a matter of public record, verifiable online at https://profiel.tmb.state.tx.us. Spears does not contend that Liu is not licensed by the state of Texas to practice acupuncture.

to other professions that perform "medical procedures," and to include in the definition of "acupuncture" the provision of "therapy to treat and mitigate a human condition," we hold that the Legislature intended the definition of "health care provider" under Chapter 74 of the TMLA to include a duly licensed acupuncturist. *See e.g.*, *Lopez v. Osuna*, 453 S.W.3d 60, 65–66 (Tex. App.—San Antonio 2014, no pet.) (holding midwife to be health care provider based in part on placement of legislation of midwives in subtitle C of Occupations Code). Given the placement of legislation governing acupuncturists, the definition of acupuncture, and the definition of health care provider in chapter 74, we hold Liu, as a duly licensed acupuncturist, is a health care provider within section 74.001 of the Civil Practice and Remedies Code.

## C. Health Care Liability Claim

We next consider whether Spears's claim is a health care liability claim. Again, a "health care liability claim" is

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). To determine whether a cause of action is a "health care liability claim," we consider the underlying nature of the

7

claim. *Loasiga*, 379 S.W.3d at 255; *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543–44 (Tex. 2004).

In her petition, Spears alleged that she received acupuncture with suction cup treatment at Liu's AAA Health Center and that because of the treatment, she had second degree burns on her upper back. She sued Liu for negligence and, alternatively, products liability. As to her negligence claim, Spears alleges that Liu negligently failed to: (1) supervise the application of suction cups; (2) train her employees properly; (3) maintain the suction cups; (4) properly administer the acupuncture session; and (5) provide proper protection to Spears during the session. The underlying nature of this claim is that Liu provided improper or deficient acupuncture treatment to Spears. Hence, Spears's claim concerns "treatment, lack of treatment, or other claimed departure from accepted standards of . . . health care." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).

We conclude that Spears's claim is a health care liability claim because the acts or omissions complained of amount to a claimed departure from accepted standards of health care. *See id*. The trial court did not err in deciding that Spears's claim is a health care liability claim. We overrule Spears's first issue.

### Sufficiency of Expert Report

Having decided that Spears asserted a health care liability claim against Liu, we turn to her contention that the trial court abused its discretion both in

8

concluding that Dr. Armm's expert report was deficient as to the standard of care and causation and in failing to grant an extension to Spears to cure the deficiencies in the report.

## A. Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). When reviewing matters committed to a trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cnty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). We conduct our review keeping in mind that Chapter 74 expert reports are required to deter baseless claims, not to block earnest ones. *Horndeski v. Price*, No. 01-21-00577-CV, 2022 WL 3363951, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2022, no pet.) (mem. op.).

9

**B. Applicable Law**

Under the TMLA, a health care liability claimant must "serve on each party, or the party's attorney, one or more expert reports with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted" to substantiate her claims. TEX. CIV. PRAC. & REM. CODE § 74.351(a); *See E.D. by & through B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 662 (Tex. 2022); *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018). The statute defines an "'expert report' as a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding (1) the applicable standards of care, (2) the manner in which the care rendered by the defendant health care provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed by the plaintiff." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6); *see E.D. by & through B.O*, 644 S.W.3d at 662 (citing TEX. CIV. PRAC. & REM. CODE § 74.351(l), (r)(6))). "An expert report demonstrates a "good faith effort" and is sufficient under the statute, when it '(1) inform[s] the defendant of the specific conduct called into question and (2) provid[es] a basis for the trial court to conclude the claims have merit.'" *E.D. by and through B.O.*, 644 S.W.3d at 664 (quoting *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018)).

10

If a plaintiff timely serves an expert report and a defendant health care provider files a motion challenging the adequacy of that report, then the trial court shall grant the motion "if it appears to the court, after [a] hearing, that the report does not represent an objective good faith effort to comply with the [TMLA's] definition of an expert report." TEX. CIV. PRAC. & REM. CODE § 74.351(l); *Baty*, 543 S.W.3d at 692–93. An expert report qualifies as an "objective good faith effort" to avoid dismissal if it discusses each element with sufficient specificity so that it (1) informs the defendant health are provider of the specific conduct that the plaintiff questions or about which the plaintiff complains and (2) provides a basis for the trial court to conclude that the plaintiff's health care liability claim has merit. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017); *see also Baty*, 543 S.W.3d at 693–94.

In determining whether an expert report constitutes an "objective good faith effort" to address each element, "a trial court may not draw inferences; instead, it must exclusively rely upon the information contained within the four corners of the report." *Puppala v. Perry*, 564 S.W.3d 190, 197 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (internal quotations and citation omitted). Courts must view the report in its entirety, rather than isolating specific portions or sections, to determine whether it is sufficient. *See Baty*, 543 S.W.3d at 694.

## C.  Analysis

### 1.  Standard of Care

Spears argues that the trial court erred in concluding that Dr. Armm's expert report does not adequately address the standard of care. Identifying the standard of care in a health care liability claim is critical. *Palacios*, 46 S.W.3d at 880. To adequately identify the standard of care, an expert report must set forth "specific information about what the defendant [physician] should have done differently." *Abshire*, 563 S.W.3d at 226 (internal quotations omitted). Related to the standard of care and breach, the expert must explain what the defendant health care provider should have done under the circumstances and what the health care provider did instead. *Palacios*, 46 S.W.3d at 880; *see also Kline v. Leonard*, No. 01-19-00323-CV, 2019 WL 6904720, at *7 (Tex. App.—Houston [1st Dist.] Dec. 19, 2019, pet. denied) (mem. op.) (noting fair summary of expert's opinion regarding standard of care and breach "must set out what care was expected, but not given"). It is not sufficient for the expert to simply state that he knows the standard of care and conclude that it was or was not met. *Palacios*, 46 S.W.3d at 880.

As to the standard of care, Dr. Armm, in his expert report, quotes a California Jury Instruction and states

> [A/An] [insert type of medical practitioner] is negligent if
> [he/she/nonbinary pronoun] fails to use the level of skill, knowledge,
> and care in diagnosis and treatment that other reasonably careful
> [insert type of medical practitioners] would use in the same or similar

circumstances. This level of skill, knowledge, and care is sometimes referred to as "standard of care."

Dr. Armm goes on to explain that "Acupuncturists are taught to notate properly, practice safely, and refer out timely to ensure patient safety." Dr. Armm opines that the acupuncturist "failed to use the skill, knowledge and care in the diagnosis and treatment" and "failed to practice safely" injuring Spears using "below Standard of Care cupping techniques." He opines that these techniques caused severe blistering and subsequent scarring.

"A report that merely states the expert's conclusions about the standard of care [and] breach" does not fulfill the purposes of requiring a good-faith effort. *Palacios*, 46 S.W.3d at 879. Instead, an expert must provide statements concerning the applicable standard of care that identify the care expected that was not given with such specificity that inferences are not needed to discern it. *Id.* at 880. The report must provide a basis for the trial court to conclude that the plaintiff's claim has merit. *Id.* at 879.

Dr. Armm's report is conclusory with respect to the applicable standard of care. He fails to describe specifically the standard of care for cupping treatment and what Liu allegedly did or failed to do that breached that standard. *See Abshire*, 563 S.W.3d at 226 (to adequately identify standard of care, expert report must set forth "specific information about what the defendant should have done differently"); *see e.g.*, *Palacios*, 46 S.W.3d at 879–80 (mere statement that

13

precautions to prevent patient's fall were not proper did not constitute statement of applicable standard of care). An expert report that merely states that the applicable standard of care requires that the patient not be injured does not allow the trial court to assess the merits of the plaintiff's claim. *Nw. EMS Consultants, P.A. v. Guillory*, No. 01-19-00668-CV, 2020 WL 4516872, at \*6–7 (Tex. App.—Houston [1st Dist.] Aug. 6, 2020, pet. denied) (mem. op.) (holding expert report conclusory for failing to describe standard of care for transferring patient strapped to stretcher from ambulance to hospital). Nothing in Dr. Armm's report explains the standard of care for acupuncture, specifically cupping treatment. We conclude that Dr. Armm's expert report does not adequately describe the applicable standard of care.

## 2. Causation

In her next issue, Spears asserts that the trial court abused its discretion in granting Liu's Chapter 74 motion to dismiss because the expert report does not adequately address causation. We agree with the trial court.

To meet the requirements of Chapter 74 as to causation, the expert must explain "how and why" the alleged negligence caused the injury in question. *Abshire*, 563 S.W.3d at 224. A conclusory statement of causation is inadequate; instead, the expert must explain the basis of his statements and link conclusions to specific facts. *Id.*; *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 (Tex. 2017). In satisfying this "how and why" requirement,

14

however, the expert need not prove the entire case or account for every known fact; the report is sufficient if it makes "a good-faith effort to explain factually, how proximate cause is going to be proven." *Abshire*, 563 S.W.3d at 224 (quoting *Zamarripa*, 526 S.W.3d at 460). An expert cannot simply opine that the breach caused the injury. *Jelinek*, 328 S.W.3d at 539.

Dr. Armm's report, construed as a whole, does not link conclusions to specific facts. *Abshire*, 463 S.W.3d at 224. The report states that the acupuncturist failed to use "skill, knowledge and care in the diagnosis and treatment" of Spears. The report states that the acupuncturist "failed to practice safely," injuring Spears "using below Standard of Care cupping techniques, resulting in severe blistering and subsequent scarring." The report does not explain how the cupping caused Spears's blisters or how an appropriate way of performing the cupping procedure would have avoided blisters.

There are simply no facts in the report connecting the treatment received to the appearance of the blisters. The report does not explain what cupping is, how it works, or how it was performed on Spears. The report concludes "it is my opinion that the blistering is not detoxification, but instead these blisters and scars are injuries from the acupuncturist's cupping treatment, with the acupuncturist's technique, knowledge and/or practice falling below standard of care (see definition below) as defined for a licensed acupuncturist to practice safely." Dr. Armm offers

15

no more than a bare assertion that the alleged breach of the applicable standard of care by Liu resulted in Spears's injuries. *See Jelinek*, 328 S.W.3d at 540; *see also Abshire*, 563 S.W.3d at 224.

Spears argues that Dr. Armm explained causation when he stated that "the acupuncturist failed to make the appropriate referral to remedy the injury which may have delayed care, but instead the practitioner stated it was an allergic reaction, would heal by itself, was simply a detox, and the blistering was normal, all of which were [un]true." Dr. Armm's conclusion fails to explain how failure to refer to a physician was a proximate cause of Spears's injuries. "A report that merely states the expert's conclusions about . . . causation" does not fulfill the purposes of requiring a good-faith effort. *Palacios*, 46 S.W.3d at 879. "Proximate cause cannot be satisfied by mere conjecture, guess, or speculation." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008).

We conclude that Dr. Armm's expert report does not adequately inform Liu of the specific conduct called into question, identify how the care she provided allegedly failed to meet the standards, or the causal relationship between her alleged failure to provide care in accordance with the applicable standard of care and the claimed injury, harm, or damages. We hold that the trial court did not err in concluding that Dr. Armm's report does not adequately address causation.

## Opportunity to Amend

Finally, Spears argues that the trial court abused its discretion by failing to allow her 30 days to cure deficiencies in Dr. Armm's expert report before dismissing her claims with prejudice. Section 74.351(a) requires the health care liability claimant to serve on each "party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted" not later than the 120th day after the filing of the original petition. TEX. CIV. PRAC. & REM. CODE § 74.351(a). If the claimant serves the expert report within the 120-day time but elements of the report are found deficient, the trial court may grant one 30-day extension to cure the deficiencies in the report. *Id.* § 74.351(c).

The record reflects that the trial court dismissed Spears's claims with prejudice without first allowing her a 30-day extension to cure the deficiencies in Dr. Armm's report. We remand to the trial court to allow Spears 30 days to cure the deficiencies.

## Conclusion

We agree with the trial court that Spears's claim was a health care liability claim and that Dr. Armm's expert report was deficient with respect to standard of care and causation. We reverse the trial court's judgment dismissing Spears's claims and remand to the trial court with instructions to grant Spears 30 days to

attempt to cure the deficiencies in the expert report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c).


 

 

Peter Kelly
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.